Rosetta **HEASTIE** and Kevin
Heastie, Plaintiffs,
v.
**COMMUNITY BANK OF GREATER
PEORIA;** Community Financial Ser-
vice, Inc.; U.S. Satellite Systems, Inc.;
First American Mortgage Company;
Alliance Funding Company; and
George Dangeles, Defendants.
No. 88 C 0358.
United States District Court,
N.D. Illinois, E.D.
May 22, 1989.

See also, D.C., 690 F.Supp. 716.

both parties contemplated that she would pay for the antenna in more than four installments. The U.S. Satellite representative therefore told Mrs. Heastie that U.S. Satellite would find financing for her on the terms stated in the contract.

Daniel A. Edelman, Chicago, Ill., for plaintiffs.

Peter B. Carey, Chicago, Ill., Daniel Robin, Garr & Robin, Schaumburg, Ill., Marvin A. Miller, Patrick Cafferty, Washlow Chertow & Miller, George S. Bellas, George Dougherty, Grippo & Elden, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Currently before the Court is the plaintiff Rosetta Heastie's motion for certification of two classes.[1] Mrs. Heastie has requested class certification only in connection with Counts I–III of the Complaint. For the reasons set forth below, the motion for class certification is granted.

### I

#### Facts [2]

Mrs. Heastie alleges that in late 1985, a representative of U.S. Satellite Systems, Inc. came to her home and convinced her to purchase a satellite dish antenna. On December 4, 1985, Mrs. Heastie signed a "cash sales contract" with U.S. Satellite, setting a purchase price of $4,000.00. The contract provided that the $4,000.00 was "payable on completion," but also provided, somewhat contradictorily, that "Customer has option to accept payments of $73.94 at 120 months." Mrs. Heastie did not have $4,000.00, and told U.S. Satellite this, and

According to Mrs. Heastie, however, there were certain problems with this transaction. First, although required to do so by the Illinois Consumer Fraud Act, Ill.Rev.Stat. ch. 121½, para. 262B (1987), U.S. Satellite did not provide Mrs. Heastie with written notice of her right to cancel the contract within three business days. Nor did it provide the disclosure statements required by the Federal Truth in Lending Act, 15 U.S.C. § 1601 *et seq.*, and by the accompanying regulations commonly known as Regulation Z, 12 C.F.R. pt. 226. In addition, the contract that Mrs. Heastie signed contained a rather stiff liquidated damages provisions, which allowed U.S. Satellite to charge 25% of the purchase price or its actual losses if Mrs. Heastie cancelled "for any reason whatsoever."

More than three business days after Mrs. Heastie signed the contract, and after the state-mandated cancellation period had passed, U.S. Satellite informed her that it had found financing from Community Bank of Greater Peoria ("Community Bank"), one of the defendants here. The loan papers that U.S. Satellite delivered to Mrs. Heastie contained more onerous provisions than the cash sales contract signed on December 4. For example, the loan provided for monthly payments of $77.78, rather than the $73.94 promised in the cash sales contract, and provided for a second mortgage on Mrs. Heastie's home. Mrs. Heastie, believing she was obligated to pay U.S. Satellite $4,000.00, felt she had no option

---

1. Mrs. Heastie's son, Kevin, is also a plaintiff, but only as to Count IV. As we note below the Heasties have not sought to certify a class for Count IV.

2. In evaluating the motion for class certification, the allegations made in support of certification are taken as true; the merits of the case are not examined. *Riordan v. Smith Barney,* 113 F.R.D. 60, 62 (N.D.Ill.1986).

but to sign the loan papers, even with the more onerous conditions.

■ Mrs. Heastie now contends that she was not alone. According to her complaint, Community Bank had entered into "a tacit agreement" with U.S. Satellite and other contractors. Under the purported agreement, the contractors would enter into contracts with consumers, promise to find financing on relatively favorable terms, wait until the three day cooling-off period had expired, and then steer the consumers to Community Bank. Community Bank then entered into loans on terms more onerous than those originally contracted for.[3]

Mrs. Heastie also contends that Community Bank would attempt to coerce or deceive consumers into paying, even though the contractors failed to fulfill their part of the contract. In Mrs. Heastie's case, the U.S. Satellite workers damaged Mrs. Heastie's roof while installing the satellite dish, and the satellite dish proved useless after being installed. Mrs. Heastie made some payments, but then notified Community Bank that she would make no further payments for the defective antenna. Community Bank insisted on payment, however, and threatened to foreclose on Mrs. Heastie's home unless she refinanced the arrearage. Community Bank apparently relied on a provision in one of Mrs. Heastie's loan documents, which stated that she was responsible for selection of the contractor, and that Community Bank was not responsible for any failure to perform or defective work on the part of the contractor. According to Mrs. Heastie, this provision, which we shall refer to as the "non-responsibility clause," violated the Federal Trade Commission's "holder in due course rule," 16 C.F.R. pt. 433, which provides that a lender in a consumer transaction is under certain circumstances subject to the same defenses as the seller of the goods or services. Mrs. Heastie contends that Community Bank was subject to the holder in due course rule, but nonetheless insisted on payment even though the satellite dish was defective. Mrs. Heastie was forced to refinance her loan, but the circumstances surrounding the refinancing are not part of the class allegations in this case and will not be discussed in this opinion.

Mrs. Heastie claims that the events pleaded are part of a business practice that Community Bank carried on with the cooperation of various contractors. Accordingly, she sued Community Bank; Community Financial Services, Inc., which serviced the loans for Community Bank; and U.S. Satellite. (We will generally refer to Community Bank and Community Financial Services collectively as "Community Bank.") Mrs. Heastie contends that Community Bank's "bait and switch" schemes violated the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–1968 (1982 Supp. V 1987) (Count I) and the Illinois Consumer Fraud and Deceptive

---

**3.** In the brief supporting her motion for class certification, Mrs. Heastie argues that "the violation exists irrespective of whether" the financing terms ultimately obtained from Community Bank were harsher than those promised by the contractor. Mem. In Support of Plaintiff's Motion for Class Certification ("Memo") at 4. Accordingly, she has changed the final criterion for inclusion in her first class from "(d) The terms of the loan agreement with Community Bank were less favorable to the borrower than those of the original contract," Complaint ¶¶ 50, 60 to "(d) They did not receive notice of their right to cancel the contract with the dealer at the time they signed the loan agreement with Community Bank," Motion for Class Certification at 2. It is apparent that Mrs. Heastie has changed her theory of the case, but she has not amended her complaint. See Complaint ¶ 45 ("Community Bank ... and U.S. Satellite devised a scheme to induce consumers [to] enter into contracts providing for financing ... on relatively favorable terms and then 'switch' them to more onerous terms provided by Community Bank.").

We were faced with a similar situation in *Ridings v. Canadian Imperial Bank,* 94 F.R.D. 147 (N.D.Ill.1982), except in that case, the classes "for all practical purposes ... appear[ed] to be nearly identical." *Id.* at 149 n. 3. Nonetheless, we refused to treat the motion for class certification as a "*de facto* amendment" of the pleading, but rather certified the class as originally proposed and allowed the plaintiffs to amend their complaint. *Id.* In this case, where the differences are more significant, we likewise will treat Mrs. Heastie's complaint as controlling, but allow leave to amend. This procedure should avoid any confusion as to what is at issue in this case. We note, however, that as in *Ridings,* class certification would be appropriate even with a redefined class. *See infra* note 6.

Business Practices Act, Ill.Rev.Stat. ch. 121½, paras. 261–267 (1987) (Count II). Mrs. Heastie also contends that Community Bank and U.S. Satellite similarly schemed to avoid the FTC's holder in due course rule, thus violating the Illinois Consumer Fraud Act. (Count III).[4] U.S. Satellite previously settled the claims against it, and we approved the settlement after a fairness hearing on July 1, 1988.

Mrs. Heastie now seeks the certification of two classes. Mrs. Heastie's definition of the two proposed classes will be detailed below, but we observe here that the first class applies to Counts I and II, while the second class applies to Count III.

## II

### Class Actions In General

Rule 23 of the Federal Rules of Civil Procedure establishes a two-step procedure to determine if a class action is appropriate. The Court must first determine if the class meets the four preliminary requirements of Rule 23(a):

(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

In addition, a class action that satisfies all four of the Rule 23(a) requirements must also qualify under one of the three subsections of Rule 23(b). Mrs. Heastie seeks certification of the first class under Rule 23(b)(3), which provides that a class action is proper if

the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and effi-

cient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of the members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

Mrs. Heastie seeks certification of the second class under Rule 23(b)(2) for declaratory relief and under Rule 23(b)(3) for monetary relief. The requirements of Rule 23(b)(3) are set out directly above; Rule 23(b)(2) provides that a class action is proper if

the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

As the plaintiff, Mrs. Heastie has the burden of showing that the requirements for class certification have been met. *Trotter v. Klincar*, 748 F.2d 1177, 1184 (7th Cir.1984); *Riordan v. Smith Barney*, 113 F.R.D. 60, 62 (N.D.Ill.1986).

## III

### The First Class

In her complaint[5] Mrs. Heastie defines the first class as those persons who meet the following criteria:

(a) they signed a contract with a provider of goods and services; (b) the provider of goods and services referred them to Community Bank; (c) they signed a loan agreement with Community Bank, the proceeds of which were used to pay for the goods or services; and (d) the terms of the loan agreement with Community

---

**4.** In Count IV, Mrs. Heastie and her son Kevin sued other defendants in connection with the refinancing of Mrs. Heastie's indebtedness.

**5.** As noted previously, *see supra* note 3, Mrs. Heastie has modified the definition of the first class in her motion for class certification. For the reasons stated above, we will consider the class as originally proposed.

Bank were less favorable to the borrower than those of the original contract.

In arguing whether to certify the first class, both sides have considered Counts I and II together. This approach is mistaken, because it is sometimes inappropriate to permit pendent claims—like Counts II and III in this action—to proceed as a class action if the federal claim does not. *See Almenares v. Wyman,* 453 F.2d 1075, 1085 (2d Cir.1971) (Friendly, C.J.) ("With respect to a class action under [Rule 23(b)(3) ], where damages or some other relief requiring examination of collateral facts is required, it could well be an abuse of a trial court's discretion to utilize the principle of pendent jurisdiction to include class claims not otherwise assertable in a federal court, even though they arise from the same nucleus of operative facts as the primary claim."), *cert. denied,* 405 U.S. 944, 92 S.Ct. 962, 30 L.Ed.2d 815 (1972). Accordingly, we will consider the appropriateness of class certification for Count I, the RICO claim, before considering certification for the pendent state claim under Count II. Under both claims, however, much of the analysis is similar.

### A. Count I—The Rico Claim

#### 1. *Numerosity*

Mrs. Heastie asserts, and Community Bank does not dispute, that both classes will number in the thousands. Clearly, each class "is so numerous that joinder of all members is impracticable." Fed.R. Civ.P. 23(a)(1).

#### 2. *Common Questions of Law or Fact and the Predominance of These Questions Over Individual Questions*

■ We will consider the Rule 23(a)(2) (commonality) and Rule 23(b)(3) (predominance) requirement together in this opinion, in part because the parties have tended to do so, and in part because the question of whether there are common issues is closely related to the question of whether these common issues predominate.

In order to establish a violation under § 1962(c) of RICO, a plaintiff must prove the following six factors:

1) that a person

2) through a pattern

3) of racketeering activity or collection of an unlawful debt

4) directly or indirectly

  (a) invests in or

  (b) maintains an interest in, or

  (c) participates in

5) an enterprise;

6) the activities of which affect interstate commerce.

*Serig v. South Cook County Service Corp.,* 581 F.Supp. 575, 577 (N.D.Ill.1984); *see also Landon v. GTE Communications Service, Inc.,* 696 F.Supp. 1213, 1215 (N.D. Ill.1988). In this case the issues involved in establishing a RICO violation are all common. Specifically, it will be necessary to determine whether Community Bank was involved in any racketeering activity, as that term is defined in 18 U.S.C. § 1961(1). Mrs. Heastie contends that Community Bank and the various contractors entered the scheme described above, that this scheme was a scheme or artifice to defraud under the mail fraud statute, 18 U.S.C. § 1341 (1982), that the mails were used on multiple occasions in this scheme, and that these acts of mail fraud constituted racketeering activity under § 1961(1). Community Bank seems to suggest that the determination of a scheme to defraud will depend on facts involving the individual class members, but we disagree. By the terms of the mail fraud statute, what is important is devising or intending to devise a scheme to defraud, and that depends only on the defendant. Thus, a scheme to defraud will violate the statute even if it never succeeds. *See, e.g., Ward v. United States,* 845 F.2d 1459, 1462 (7th Cir.1988). It follows that a scheme to defraud will violate the statute, no matter the characteristics of the scheme's intended victims. We conclude, therefore, that the existence of racketeering activity is a common question of law and fact.

Likewise, the other elements necessary for a RICO violation are also common issues. First, the existence of a pattern of racketeering activity has caused difficulty for many courts, *see Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 496 n. 14, 105

S.Ct. 3275, 3285 n. 14, 87 L.Ed.2d 346 (1985); *Jones v. Lampe,* 845 F.2d 755, 756 n. 4 (7th Cir.1988) and cases cited therein, but in this case, it depends on the actions of Community Bank and its purported conspirators, not on the consumers allegedly victimized by their scheme. Similarly, the plaintiffs will need to show that Community Bank and Community Financial have participated in an "enterprise." Mrs. Heastie contends that Community Bank and Community Financial individually and as a group are enterprises; again, obviously, this does not depend on any class plaintiffs. The same is true for the last issue, whether these enterprises affect interstate commerce.

In short, the question of whether there has been a violation of RICO will turn on common questions of law and fact, and thus the requirement of Rule 23(a)(2) is satisfied. On the other hand, whether Community Bank is liable to an individual plaintiff and the determination of appropriate damages will require individual determinations. Under RICO,

> [T]he plaintiff only has standing if, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the violation. As the Seventh Circuit has stated, "[a] defendant who violates section 1962 is not liable for treble damages to everyone he might have injured by other conduct, nor is the defendant liable to those who have not been injured."

*Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 496–97, 105 S.Ct. 3275, 3285, 87 L.Ed. 2d 346 (1985) (quoting *Haroco, Inc. v. American National Bank & Trust Co. of Chicago,* 747 F.2d 384, 398 (7th Cir.1984), *aff'd,* 473 U.S. 606, 105 S.Ct. 3291, 87 L.Ed.2d 437 (1985)). Thus, if a violation of RICO is shown, each plaintiff will have to show that the violation caused injury to his or her property.

Nonetheless, "a class action will not be defeated solely because of some factual variations among class members' grievances." *Patterson v. General Motors Corp.,* 631 F.2d 476, 481 (7th Cir.1980), *cert. denied,* 451 U.S. 914, 101 S.Ct. 1988, 68 L.Ed.2d 304 (1981). The necessity of answering individual questions after answering common questions will not prevent a class action. *See Ridings v. Canadian Imperial Bank,* 94 F.R.D. 147, 151 (N.D. Ill.1982) (Aspen, J.) (securities fraud case; "If necessary, the Court may order separate hearings on the individual questions of reliance after determination of the common questions of law and fact."); *Issen v. GSC Enterprises,* 522 F.Supp. 390, 403 (N.D.Ill. 1981) (Aspen, J.); *Helfand v. Cenco, Inc.,* 80 F.R.D. 1, 9 (N.D.Ill.1977). Moreover, the individual questions of injury and damages seem relatively easy to resolve in this case. Mrs. Heastie's theory is that Community Bank schemed with various contractors to lure consumers into entering contracts with relatively favorable credit terms, and then switched them to more costly financing with Community Bank. Mrs. Heastie claims that damages should be measured by the difference between the terms in the original contracts and the terms eventually obtained from Community Bank. Assuming that this difference correctly measures the amount of damages, it would be relatively simple to determine, merely by comparing the contract between the consumer and the contractor with the contract between the consumer and Community Bank. This should not require even a hearing. We accordingly conclude that the common issues predominate over these issues which affect only individual members.[6]

---

**6.** Even under Mrs. Heastie's revised theory of the case, *see supra* note 3, the determination of individual issues seem to be relatively simple. We are at a disadvantage here, since Mrs. Heastie has not amended her complaint, but she appears to argue that Community Bank schemed with various contractors to coerce consumers into agreeing to loans. As describe above, the contractor would convince the consumer to sign a contract for goods or services, promise to find financing, but not inform the consumer of the three-day cooling-off period mandated by state law. After the three days had gone by, the contractor would return with the Community Bank financing. The consumer, facing the option of signing the loan or being sued by the contractor, signed the loan. According to Mrs. Heastie, this was a violation of RICO even if the loan terms were the same in the original con-

We note here that establishment of sub-classes may be necessary at a later date. Mrs. Heastie's theory is that Community Bank conspired with various contractors; in her Memorandum supporting class certification, she identifies six such contractors, including U.S. Satellite. Memo at 1–2. However, the evidence may show that Community Bank conspired with contractors A, B and C, for example, but not with contractors D, E and F. A consumer who had a contract with contractor D consequently would be unable to show that he was injured "by reason of a [RICO] violation." 18 U.S.C. § 1964(c) (1982); *see Sedima,* 473 U.S. at 496, 105 S.Ct. at 3285. Thus, it may be appropriate to divide the class members into subclasses, depending on which contractor they dealt with, but we can defer a decision on this matter to a later date. As we recently stated, deferral "is especially prudent when the disposition of the common issues may obviate the need to resolve these issues that affect only a subset of the class." *Merk v. Jewel Food Stores Division,* 702 F.Supp. 1391, 1395 (N.D.Ill.1988).

### 3. *Typicality*

■ Community Bank asserts that because individual issues predominate, Mrs. Heastie's claims cannot be typical of those of the class. However, we concluded in the preceding section that common issues do predominate, and we conclude here that Mrs. Heastie has satisfied the typicality requirement of Rule 23(a)(3). That requirement requires the district court "to focus on whether the named representatives' claims have the same essential characteristics as the claims of the class at large." *De la Fuente v. Stokely–Van Camp, Inc.,* 713 F.2d 225, 232 (7th Cir.1983). That standard is met here. Mrs. Heastie is a member of the class, she relies on the same legal theory as the rest of the class, and Community Bank does not appear to have

any affirmative defenses that apply to her alone. To be sure, these are some factual distinctions between Mrs. Heastie's claim and those of the class, but that alone does not defeat the typicality requirement. *Id.* We hold, therefore, that Rule 23(a)(3) is satisfied.

### 4. *Adequacy of Class Representation*

■ Community Bank also argues that Mrs. Heastie would be an inadequate class representative. Relying on the transcripts of her deposition, Community Bank contends that Mrs. Heastie does not have a sufficient understanding of class actions, of her duties as a class representative, or of the facts underlying her claim.

In our view, Community Bank has a distorted impression of the requirements of Rule 23(a)(4). The courts usually have focused on the competency of the named plaintiff's counsel and the existence of any conflicts of interest between the named class representative and other class members. *See General Telephone Co. of Southwest v. Falcon,* 457 U.S. 147, 157 n. 13, 102 S.Ct. 2364, 2370 n. 12, 72 L.Ed.2d 740 (1982); *United Independent Flight Officers v. United Air Lines,* 572 F.Supp. 1494, 1499 (N.D.Ill.1983) (Aspen, J.), *aff'd,* 756 F.2d 1274 (7th Cir.1985).

■ In this case, Mrs. Heastie's attorneys are experienced class action attorneys, and we can discern no conflicts between Mrs. Heastie's claim and those of the other class members. Moreover, lack of sophistication does not necessarily render a class representative inadequate. As the Seventh Circuit stated in 1981:

> [T]he class representative's role is limited. It was found not to be enough to defeat a class certification in *Surowitz v. Hilton Hotels Corp.,* 383 U.S. 363, 366, 86 S.Ct. 845, 847, 15 L.Ed.2d 807 (1966),

tract and in the subsequent loan document. Memo. at 4.

If Mrs. Heastie's legal theory is correct, and if she can establish the existence of such a scheme —two questions that are common to the class— liability to individual class members could be determined by an examination of the various documents signed. The original contract would indicate whether notice of the cooling-off period was given and whether financing was promised, and comparison of the dates on the contract and the loan document would show whether three days had elapsed. Because the individual issues appear relatively simple, we conclude that issues common to the class would predominate even under Mrs. Heastie's revised theory, at least as we presently understand that theory.

that the named plaintiff did not understand her complaint at all, could not explain the statements in it, had little knowledge of what the lawsuit was about, did not know the defendants by name, nor even the nature of the misconduct of the defendant. The plaintiff, a Polish immigrant, had relied on her son-in-law.

*Eggleston v. Chicago Journeymen Plumbers' Local Union No. 130,* 657 F.2d 890, 896 (7th Cir.1981), *cert. denied,* 455 U.S. 1017, 102 S.Ct. 1710, 72 L.Ed.2d 134 (1982). It would be particularly inappropriate to require too much sophistication in a case like this, since Mrs. Heastie argues that Community Bank targeted these consumers partly *because* they were unsophisticated.

More importantly, however, the factual basis for Community Bank's argument is weak. Mrs. Heastie's supposed unfamiliarity with her own claim appears to be an understandable inability to remember details about the contract and loan without the papers in front of her. Moreover, while Mrs. Heastie is not a lawyer, she seems to have a good understanding of the process and to be smart enough to know what she doesn't know. When asked to define a class action, she responded "It's when several, maybe hundreds other people have been involved in the same situation with the same companies or company." R. Heastie Dep. at 11. And when opposing counsel asked her what her damages were under the complaint, "At this time I have no idea, that's why I am seeking counsel. That is why I saw counsel because I didn't know." *Id.* at 42–43. In short, Mrs. Heastie is adequate as a class representative. We therefore conclude the requirements of Rule 23(a)(4) are met.

### 5. *Superiority*

■ Rule 23(b)(3) requires both that the class issues predominate, and that a class action is superior to other available methods of adjudication. We concluded above, *see* Section III A2, that the predominance requirement was met for the first class with regard to the RICO claim. We conclude here that the superiority claim is also satisfied. The individual claims here are perhaps larger than in many consumer credit class actions, but still relatively small and therefore well-suited for class treatment. As the Supreme Court has noted, "Class actions ... may permit the plaintiffs to pool claims which would be uneconomical to litigate individually. [In such a case,] most of the plaintiffs would have no realistic day in court if a class action were not available." *Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 809, 105 S.Ct. 2965, 2973, 86 L.Ed.2d 628 (1985). We conclude, therefore, that the superiority requirement is therefore satisfied. With all the requirements met, certification of the first class with regard to the RICO claim is appropriate.

### B. Count II—The Illinois Consumer Fraud Act Claim

#### 1. *Numerosity, Typicality, Adequacy of Representation and Superiority*

For the reasons set forth above, we conclude that the numerosity (*see* Section III A1), typicality (III A3), adequacy of class representation. (III A4), and superiority (III A5) requirements have been satisfied for the first class with regard to Illinois Consumer Fraud Act claim.

#### 2. *Common Questions and Predominance*

■ Mrs. Heastie alleges that the same schemes which purportedly violates the federal RICO statutes also violates Section 2 of Illinois Consumer Fraud Act, Ill.Rev. Stat. ch. 121½, para. 262 (1987). Section 2 provides in pertinent part:

[U]nfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the fact ... in the conduct of any trade or commerce are hereby declared unlawful.....

Clearly, whether the alleged scheme violates Section 2 and whether it existed at all are questions common to the class, thus satisfying Rule 23(a)(2). Community Bank, however, presents a number of individual

issues that it claims are necessary for determination of individual claims. According to Community Bank, these individual issues preclude our finding that common issues predominate.

Unfortunately, and rather disappointingly, Community Bank has only listed these purported individual issues, without explaining why they might be important. Some of the questions, like question 5—what the consumer's financial condition was at the time of the original contract and the loan—and question 6—what other sources of financing were available to the consumer beside Community Bank—do not appear to be legally significant. Although we have found no cases on point, the availability of other sources of the product or service in question should not be a defense to a claim under the Consumer Fraud Act. Otherwise, the person who employs unfair or deceptive practice to sell widgets would be able to defend merely by claiming that the consumer could have bought widgets elsewhere. Such a defense would emasculate the Act, since there presumably are honest sellers in every field in which there are dishonest ones.

Likewise, question 3—whether the consumer was told that the contractor would find financing—seems to be a variation on the same theme. By definition, the class members are those consumers who were referred to Community Bank for financing by the contractor. Even if the contractor did not tell some class members that it would find financing, it did find financing for them, and whether the consumers might have found financing on their own is irrelevant.

In the same manner, question 4—what was the consumer's belief concerning the right to cancel the contract—is also irrelevant. The violation alleged here is the failure to give the notice, *see* Ill.Rev.Stat. ch. 121½, para. 262B (1987), not the consumers belief. Moreover, it is a common question whether Community Bank can be charged with the contractors' failure to give notice.

At least one of the purportedly individual issues appears to be a common issue. That issue is question 8—did the consumer receive any benefit from the notice in the loan documents that the consumer had a right to cancel the loan (as opposed to the contract) within three days. While the presence of such notice is an individual question, it is a relatively easy question to resolve. More importantly, the effect of this disclaimer, and in particular, whether it would protect Community Bank from liability, would be a question of law common to the class.

Another of the purportedly individual issues—question 2, what representations and what financing disclosures were made—may also be common. Mrs. Heastie contends that the evidence will show that Community Bank's practice was to decide the financing terms only after the original contract was signed, so that the contractor could not have disclosed the pertinent terms when the contract was signed. If this is so, then this question will be a common one, but if it is not, the question will require individual determination. At this stage, we think it is the better course to assume that this will be a common issue. If at a later date it appears that it is not a common question, we will not hesitate to reconsider our certification.

Thus, many of the supposedly individual issues are either not issues at all, or really issues common to the class. Still, individual issues remain. Some are relatively simple to resolve, like question 1, the terms of the original contracts, and question 10, the complaints that were made to Community Bank about the work of the contractor. The remaining questions may require somewhat more effort, especially those questions involving damages. Under Section 10a of the Consumer Fraud Act, the court, in its discretion, may award actual damages or other proper relief to any person who suffers damages as a result of a violation of Section 2 of the Act. *See* Ill. Ann.Stat. ch. 121½, para. 270a(a). (West Supp.1988).[7]

---

**7.** The Eighty–Fifth Illinois General Assembly enacted two separate and conflicting acts amending Section 10a, so there are currently two versions of the statute on the books. *See generally*

We recognize that a determination of damages, if necessary, will entail individual factual questions. Unlike the damage questions in Count I, these questions probably cannot be resolved by the mechanical/comparison of figures in a document. Nevertheless, we do not perceive these questions to be any more difficult than individual questions of reliance; as noted above, we have in other cases granted class certification even though individual questions of reliance would have required individual hearings. *Ridings v. Canadian Imperial Bank*, 94 F.R.D. 147, 151 (N.D.Ill. 1982); *Issen v. GSC Enterprises, Inc.*, 522 F.Supp. 390, 403 (N.D.Ill.1981). Given the other common questions, and given the relatively small size of the individual claims, which would make any other form of adjudication impracticable, we conclude that the proposed class meets the requirements of Rule 23(b)(3) and that class certification is therefore in order.[8]

## IV

### The Second Class

■ Mrs. Heastie also seeks to certify a second class, defined as those people (a) who were referred to Community Bank by a provider of goods or services; (b) who obtained a loan from Community Bank, the proceeds of which were used to pay for the goods or services; and (c) who signed a document in which they purported to agree that "I (We) understand that the selection of the dealer and the acceptance of the materials used and the work performed is my (our) responsibility and that the financial institution [that is, Community Bank] does not guarantee the material or workmanship or inspect the work performed."[9] As stated previously, Mrs. Heastie seeks to certify this class only for Count III, and

under Rule 23(b)(2) for declaratory relief and Rule 23(b)(3) for monetary relief.

### A. Declaratory Relief

#### 1. *Numerosity, Typicality, and Adequacy of Representation*

For the reasons set forth above, we conclude that the numerosity (*see* Section III A1), typicality (III A2), and adequacy of representation (III A4) requirements have been satisfied.

#### 2. *Commonality*

Mrs. Heastie asserts that the non-responsibility clause was an attempt to evade the FTC's holder in due course rule, 16 C.F.R. part 433, and was thus an unfair or deceptive practice under Section 2 of the Illinois Consumer Fraud Act, Ill.Rev.Stat. ch. 121½, para. 262 (1987). Clearly, whether the non-responsibility clause violates the Consumer Fraud Act is a common question, and thus the requirements of Rule 23(a)(2) are met. Since this is a Rule 23(b)(2) class action, we need not determine whether the common issues predominate, but even if we did, we can see no individual issues present here.

#### 3. *Whether Community Bank Has Acted or Refused to Act on Grounds Injunctive Generally Applicable to the Class, Thereby Making Final Relief or Corresponding Declaratory Relief Appropriate*

By definition, the class members are those who signed a loan document from Community Bank that included the non-responsibility clause. Thus, Community Bank has acted on grounds generally applicable to the class, and the first requirement of Rule 23(b)(2) is therefore met.

Mrs. Heastie also seeks an injunction restraining Community Bank from attempting to enforce the non-responsibility provision against her or the class, and this

---

Ill.Rev.Stat. ch. 1, para. 1105 (1987). However, it is clear under either version that damages are available to persons damaged by a violation of Section 2 of the Act.

**8.** It is appropriate to note again that our class certification decision is not etched in stone. If our determination turns out to be incorrect and the damages questions prove unmanageable, we

may create subclasses or even decertify the class in order to ease the burdens on the resources of this Court. *See Eggleston,* 657 F.2d at 896.

**9.** Unlike the first class, the second class is defined essentially the same way in both the complaint and the motion for class certification. The only changes are stylistic ones.

meets the second requirement of 23(b)(2). We will therefore certify the second class under Rule 23(b)(2) as to declaratory relief under Count III.

### B. Damages Relief

#### 1. *Numerosity, Typicality, Adequacy of Representation and Superiority*

For the reasons set forth above, we conclude that· the numerosity (*see* Section II A1), typicality (III A3), adequacy of representation (III A4), and superiority (III A5) requirements have been met.

#### 2. *Common Questions and Predominance*

In Count III, as stated above, Mrs. Heastie claims that the non-responsibility clause violates the Illinois Consumer Fraud Act. Whether it does is clearly a question common to the class, since the class is defined by the presence of the clause. The only remaining issues, as far as we can discern, are the existence and extent of individual damages. For the reasons outlined at the end of Section III B2, the presence of individual questions of damages will not preclude a finding of predominance here. We accordingly will certify the proposed class for monetary damages under Rule 23(b)(3).

### Conclusion

We conditionally certify the following class for Counts I and II under Rule 23(b)(3): Those persons who meet the following criteria: (a) they signed a contract with a provider of goods and services; (b) the provider of goods and services referred them to Community Bank; (c) they signed a loan agreement with Community Bank, the proceeds of which were used to pay for the goods or services; and (d) the terms of the loan agreement with Community Bank were less favorable to the borrower than those of the original contract.

We conditionally certify the following class for Count III under Rule 23(b)(2) for declaratory relief and under Rule 23(b)(3)

for monetary relief: Those persons (a) who were referred to Community Bank by a provider of goods or services; (b) who obtained a loan from Community Bank, the proceeds of which were used to pay for the goods or services, and (c) who signed a document from Community Bank in which they purported to agree that "I (We) understand that the selection of the dealer and the acceptance of the materials used and the work performed is my (our) responsibility and that the financial institution does not guarantee the material or workmanship or inspect the work performed." It is so ordered.[10]

---

**10.** As this Court observed earlier, the class definitions proposed in Mrs. Heastie's motion for class certification differs from that set forth in her complaint. The Court has certified the class as originally proposed, but Mrs. Heastie may file an appropriate motion to amend both her complaint and the class definitions we have set forth here, it she desires on or before May 26, 1989.