NOTICE

Decision filed 06/27/07. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

NO. 5-05-0354

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | |
|---|---|
| JESSICA HALL, Individually and on Behalf of Others Similarly Situated, | ) Appeal from the<br>) Circuit Court of<br>) Madison County. |
| Plaintiff-Appellee, | ) |
| | ) |
| v. | ) No. 04-L-113 |
| | ) |
| SPRINT SPECTRUM L.P., d/b/a Sprint PCS Group, and SPRINTCOM, INC., d/b/a Sprint PCS Group, | )<br>)<br>) Honorable<br>) Nicholas G. Byron, |
| Defendants-Appellants. | ) Judge, presiding. |

_____

JUSTICE STEWART delivered the opinion of the court:

The defendants, Sprint Spectrum L.P. and SprintCom, Inc., both doing business as Sprint PCS Group (collectively referred to as Sprint), appeal, pursuant to Illinois Supreme Court Rule 306(a)(8) (210 Ill. 2d R. 306(a)(8)), from an order of the circuit court of Madison County certifying a 48-state class in a putative class action lawsuit filed by the plaintiff, Jessica Hall. We affirm.

BACKGROUND

Sprint provides wireless communications services to millions of customers throughout the United States. Sprint is headquartered in Overland Park, Kansas, but operates and conducts its business throughout the United States, including within the State of Illinois.

In June 2003, Hall, a resident of Madison County, Illinois, entered into a cell phone service contract with Sprint at a Radio Shack store in Granite City, Illinois. In doing so, she agreed to be bound to a one-year contract and to pay a $150 early termination fee if she did not remain a customer for a full year. Hall's account included two cell phone numbers.

1

In October 2003, Sprint discontinued Hall's service for nonpayment. Hall then called Sprint to cancel her contract, but Sprint refused to cancel her service unless she paid the remaining balance on her account plus the early termination fee. In December 2003, at the Sprint PCS store in Fairview Heights, Illinois, Hall paid, under protest, the entire amount ($415.61) Sprint claimed she owed on one of her two cell phone numbers, including the early termination fee. She also wanted to cancel her second cell phone number but could not afford to pay the early termination fee. Sprint refused to cancel the account and stop the accrual of charges unless Hall paid the early termination fee for the second cell phone number. She never paid the early termination fee for the second cell phone number, and ultimately, Sprint wrote off the second account for nonpayment.

On February 2, 2004, Hall filed her original class action complaint alleging four causes of action: (1) breach of contract, (2) statutory fraud, (3) unjust enrichment, and (4) relief from unlawful penalties. Each cause of action rested on the theory that early termination fees are unlawful penalties. Hall sought damages for all early termination fees Sprint had collected from consumers in the United States. Hall brought her original class action complaint under Illinois's Consumer Fraud and Deceptive Business Practices Act (Illinois Consumer Fraud Act) (815 ILCS 505/1 *et seq.* (West 2002)) for Illinois class members and, for non-Illinois class members, under the consumer protection statutes of their respective states.

With her class action complaint, Hall filed a motion for class certification, pursuant to section 2–801 of the Code of Civil Procedure (735 ILCS 5/2–801 (West 2002)). Following a hearing on February 18, 2005, the trial court entered a handwritten order, granting the motion and certifying a 48-state class action. In the order, the trial court directed the parties to submit a formal proposed order.

On March 23, 2005, Hall filed a first amended class action complaint, alleging five

2

causes of action: (1) breach of contract (count I), (2) violation of the Kansas Consumer Protection Act (Kan. Stat. Ann. §50–623 *et seq.* (2005)) (count II), (3) statutory fraud under the Illinois Consumer Fraud Act and the consumer protection statutes of the other states where Sprint does business (count III), (4) unjust enrichment (count IV), and (5) relief from unlawful penalties (count V).

In her first amended complaint, Hall alleged that Sprint placed the following express choice-of-law provision in all of its contracts: "This Agreement is governed by and must be construed under federal law and the laws of the State of Kansas, without regard to choice [-]of[-]law principles."[1] Accordingly, unlike the original complaint, which largely depended upon the Illinois Consumer Fraud Act, the first amended complaint alleged that Kansas common law should be applied nationally (counts I, IV, and V) and the Kansas Consumer Protection Act should be applied nationally (count II) or that the Illinois Consumer Fraud Act should be applied to Illinois residents and the consumer fraud acts of the other 47 states should be applied to residents of those states (count III).

Also on March 23, 2005, Sprint filed a motion to reconsider the trial court's order granting Hall's motion for class certification. Following a hearing on April 5, 2005, the trial court denied Sprint's motion to reconsider.

On May 20, 2005, the trial court entered a formal, written order, certifying the following 48-state class: "All persons who were charged a Sprint Early Termination Fee because they canceled their cellular or wireless agreement before the end of its term." The order contemplates the application of Kansas law based on the express choice-of-law

---

[1]In fact, many contracts entered into with defendant Sprint Spectrum L.P., the Missouri limited partnership, contained a similar choice-of-law provision stating that Missouri law would apply. While we base our discussion on the Kansas choice-of-law provision, our analysis would be the same regarding the Missouri choice-of-law provision.

provision contained in Sprint's form contract.

On June 17, 2005, Sprint filed a petition for leave to appeal to this court, pursuant to Illinois Supreme Court Rule 306(a)(8) (210 Ill. 2d R. 306(a)(8)), which was denied on September 14, 2005. On October 19, 2005, Sprint filed a petition for leave to appeal to the Illinois Supreme Court. On January 25, 2006, the Illinois Supreme Court denied Sprint's petition for leave to appeal but issued a supervisory order, ordering this court to grant Sprint's petition for leave to appeal in light of *Avery v. State Farm Mutual Automobile Insurance Co.*, 216 Ill. 2d 100, 835 N.E.2d 801 (2005). *Hall v. Sprint Spectrum L.P.*, 217 Ill. 2d 600, 840 N.E.2d 1232 (2006). On February 22, 2006, this court granted Sprint's petition for leave to appeal.

### ANALYSIS

On appeal, Sprint first argues that if the trial court predicated the 48-state class certification upon the application of the Illinois Consumer Fraud Act, the order is erroneous because the Illinois Consumer Fraud Act may not be applied extraterritorially. Sprint also argues that if the trial court predicated the class certification upon the application of the differing statutory and common law standards of 48 states, the order is erroneous. We need not address either of these arguments because, despite Sprint's arguments to the contrary, it is clear from the trial court's order that the class certification was not predicated upon the application of the Illinois Consumer Fraud Act or the differing statutory and common law standards of 48 states. Instead, the class certification was predicated upon the application of Kansas law based on the choice-of-law provision contained in Sprint's form contract.

Sprint next argues that if the 48-state class certification was predicated upon the application of the Kansas Consumer Protection Act, the order must be reversed for two reasons: (1) based on the language of the statute, the Kansas Consumer Protection Act, like the Illinois Consumer Fraud Act, cannot be applied extraterritorially and (2) the Kansas

4

Consumer Protection Act cannot be applied to all class members because the choice-of-law provision does not govern noncontractual claims, such as statutory fraud. We disagree.

This is not a case like *Avery*, where the plaintiff sought extraterritorial application of a statute based on the terms of the statute. See *Avery*, 216 Ill. 2d at 188-89, 835 N.E.2d at 855. Instead, in this case, the trial court enforced a voluntary and broadly worded choice-of-law provision in an adhesion contract drafted by Sprint to determine the validity and legality of a provision within the same contract–the early termination fee provision.

Sprint's choice-of-law provision states that the agreement should be governed by the law of Kansas. The only issue in this case is the validity of the early termination fee, and by the parties' own choice, that issue is governed by Kansas law. The fact that Kansas law might not otherwise apply is irrelevant, because the parties chose to apply Kansas law.

"Ordinarily, Illinois follows the Restatement (Second) of Conflict of Laws (1971) in making choice-of-law decisions." *Morris B. Chapman & Associates, Ltd. v. Kitzman*, 193 Ill. 2d 560, 568, 739 N.E.2d 1263, 1269 (2000). "Section 187 of the Restatement applies when the parties, as here, have made an express choice of law in their contract." *Maher & Associates, Inc. v. Quality Cabinets*, 267 Ill. App. 3d 69, 76, 640 N.E.2d 1000, 1006 (1994). Section 187(2) of the Restatement (Second) of Conflict of Laws provides, in pertinent part:

"(2) The law of the state chosen by the parties to govern their contractual rights and duties will be applied *** unless either

(a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or

(b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of §188, would be the state of the applicable law in the absence of an

5

effective choice of law by the parties." Restatement (Second) of Conflict of Laws §187(2) (1971).

"The public policy of a State must be sought in its constitution, legislative enactments[,] and judicial decisions." *Roanoke Agency, Inc. v. Edgar*, 101 Ill. 2d 315, 327, 461 N.E.2d 1365, 1371 (1984).

In the present case, there is no question that Kansas and Missouri have a "substantial relationship to the parties or the transaction," because defendant SprintCom, Inc., is a Kansas corporation with its principal place of business in Kansas and defendant Sprint Spectrum L.P. is a Missouri limited partnership. In addition, there is no argument here that the Illinois constitution or legislative enactments articulate a public policy against applying a foreign state's consumer protection laws or that Illinois has a "materially greater interest" in the litigation than Kansas or Missouri. Therefore, the trial court properly found that the express choice-of-law provision contained in Sprint's form contract governs the contract.

These principles apply with equal force to the interpretation of the contract at issue and to the validity of its provisions. See Restatement (Second) of Conflict of Laws §187(2), Comment *e*, at 565 (1971) ("Prime objectives of contract law are to protect the justified expectations of the parties and to make it possible for them to foretell with accuracy what will be their rights and liabilities under the contract. These objectives may best be attained in multistate transactions by letting the parties choose the law to govern the validity of the contract and the rights created thereby. In this way, certainty and predictability of result are most likely to be secured. Giving parties this power of choice is also consistent with the fact that, in contrast to other areas of the law, persons are free within broad limits to determine the nature of their contractual obligations").

Sprint argues that because the Kansas Consumer Protection Act does not purport to have any extraterritorial application, it cannot be applied to any transaction that occurred

6

outside Kansas, notwithstanding the parties' express choice-of-law provision stating that Kansas law would apply. Sprint argues that the Kansas Consumer Protection Act applies only to a "consumer transaction" (see Kan. Stat. Ann. §§50–626(a), 50–627(a) (2005)), which is defined as "a sale, lease, assignment[,] or other disposition for value of property or services *within this state*" (emphasis added) (Kan. Stat. Ann. §50–624(c) (2005)).

However, the issue is not the territorial application of the Kansas Consumer Protection Act but whether the parties chose to apply Kansas law to govern the validity of the provisions in their contract. The fact that Kansas law might not otherwise apply is irrelevant because the parties expressly agreed that Kansas law would apply. See *Davis v. Miller*, 269 Kan. 732, 739, 7 P.3d 1223, 1229 (2000) ("Despite the legislative intent and the clear language of the [act], parties can bind themselves to the provisions of an otherwise inapplicable act by incorporating choice[-]of[-]law provisions in an enforceable contract. As long as application of a statute or act is not contrary to public policy, a court will uphold application of an otherwise inapplicable statute or act"); *Bartlett Bank & Trust Co. v. McJunkins*, 147 Ill. App. 3d 52, 59, 497 N.E.2d 398, 403 (1986) ("Even where the [Uniform Commercial] Code is otherwise inapplicable, the parties may incorporate the Code into their agreement and that agreement will be given effect"). Therefore, the trial court properly found that the parties bound themselves to the provisions of the Kansas Consumer Protection Act by incorporating the express choice-of-law provision in their enforceable contract.

Sprint also argues that Hall's claims are "noncontractual" and, therefore, that the choice-of-law provision should not apply to them. Hall has alleged a variety of claims, including breach of contract and statutory fraud. Each of these claims is based on the theory that the early termination fee is an unlawful penalty. The principle that a contract penalty is illegal and unenforceable is, itself, fundamentally a creature of contract law. See Restatement (Second) of Contracts §356, Comment *a*, at 157 (1981) ("[T]he parties to a

7

contract are not free to provide a penalty for its breach. The central objective behind the system of contract remedies is compensatory, not punitive. Punishment of a promisor for having broken his promise has no justification on either economic or other grounds and a term providing such a penalty is unenforceable on grounds of public policy"). Hall's various claims do not reflect differing sources of the law so much as alternative theories whereby she and the other class members can bring an action to enforce the same underlying legal principle that comes from contract law, not tort law.

Before *Avery*, Illinois courts traditionally held that where a contract contained an express choice-of-law provision, the consumer protection law of the designated state would apply. See, *e.g.*, *Potomac Leasing Co. v. Chuck's Pub, Inc.*, 156 Ill. App. 3d 755, 757-60, 509 N.E.2d 751, 753-55 (1987) (where a choice-of-law provision in the parties' contract designated Michigan law, Michigan consumer protection law applied).

In *Avery*, the Illinois Supreme Court held, "[A] plaintiff may pursue a private cause of action under the Consumer Fraud Act if the circumstances that relate to the disputed transaction occur primarily and substantially in Illinois." *Avery*, 216 Ill. 2d at 187, 835 N.E.2d at 853-54. The court in *Avery* discussed *Martin v. Heinold Commodities, Inc.*, 117 Ill. 2d 67, 510 N.E.2d 840 (1987), wherein the Illinois Supreme Court allowed the certification of the claims of the plaintiff class under the Illinois Consumer Fraud Act even with respect to the non-Illinois plaintiffs. *Avery*, 216 Ill. 2d at 188-89, 835 N.E.2d at 854-55. Although the court in *Martin* held that the application of Illinois law to a multistate class was consistent with principles of due process, the court in *Avery* noted that the *Martin* court did not address the scope of the Illinois Consumer Fraud Act as a matter of statutory interpretation. *Avery*, 216 Ill. 2d at 188-89, 835 N.E.2d at 855. The *Avery* court did not overrule *Martin* but, instead, distinguished it as follows:

"In *Martin* ***, this court specifically based its decision on the following facts:

8

(1) the contracts containing the deceptive statements were all executed in Illinois; (2) the defendant's principal place of business was in Illinois; (3) *the contract contained express choice-of-law and forum-selection clauses specifying that any litigation would be conducted in Illinois under Illinois law*; (4) complaints regarding the defendant's performance were to be directed to its Chicago office; and (5) payments for the defendant's services were to be sent to its Chicago office. Given these circumstances, this court concluded that the [Illinois Consumer Fraud] Act could apply to the whole class." (Emphasis added.) *Avery*, 216 Ill. 2d at 189, 835 N.E.2d at 855.

The *Avery* court found that, unlike *Martin*, virtually no circumstances relating to the disputed claims and practices at issue occurred or existed in Illinois for those plaintiffs who were not Illinois residents. *Avery*, 216 Ill. 2d at 189, 835 N.E.2d at 855. Therefore, the *Avery* court concluded, "[T]he circuit court erred in certifying a nationwide class that included class members whose claims proceedings took place outside Illinois." *Avery*, 216 Ill. 2d at 190, 835 N.E.2d at 855. Because the court decided the propriety of the certification order on statutory interpretation grounds, it declined to consider whether the certification of the nationwide class was unconstitutional or violated express choice-of-law rules. *Avery*, 216 Ill. 2d at 190, 835 N.E.2d at 855.

In the present case, as in *Martin* and unlike in *Avery*, the parties' contract contained an express choice-of-law provision. Moreover, as this court recently stated in *Barbara's Sales, Inc. v. Intel Corp.*, 367 Ill. App. 3d 1013, 1021, 857 N.E.2d 717, 724 (2006), *appeal allowed*, 222 Ill. 2d 567, 861 N.E.2d 653 (2006), "*Avery* in no way breaks with choice-of-law precedent and does not change the choice-of-law analysis to be applied." Therefore, under the express choice-of-law provision contained in the parties' contract, Kansas law, including the Kansas Consumer Protection Act, is applicable. See *Potomac Leasing Co.*, 156

Ill. App. 3d at 757-60, 509 N.E.2d at 753-55.

Sprint next argues that applying the Kansas Consumer Protection Act to non-Kansas class members would violate their due process rights under *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 86 L. Ed. 2d 628, 105 S. Ct. 2965 (1985). We disagree.

In *Phillips Petroleum Co.*, the United States Supreme Court stated:

"Kansas must have a 'significant contact or significant aggregation of contacts' to the claims asserted by each member of the plaintiff class, contacts 'creating state interests,' in order to ensure that the choice of Kansas law is not arbitrary or unfair. [Citation.] ***

When considering fairness in this context, an important element is the expectation of the parties." *Phillips Petroleum Co.*, 472 U.S. at 821-22, 86 L. Ed. 2d at 648-49, 105 S. Ct. at 2979-80.

Because Sprint's form contract contained an express choice-of-law provision, the class members had reason to anticipate that Kansas law would govern their consumer fraud claim. Accordingly, enforcing the express choice-of-law provision is consistent with fulfilling the expectations of the parties and is not arbitrary or unfair. See *Phillips Petroleum Co.*, 472 U.S. at 821-22, 86 L. Ed. 2d at 648-49, 105 S. Ct. at 2979-80. As long as the law chosen in the contract satisfies the "substantial relationship to the parties or the transaction" test, as it does in this case, enforcing it will not violate due process. See Restatement (Second) of Conflict of Laws §187(2)(a) (1971).

Relying upon *Avery* and *Gridley v. State Farm Mutual Automobile Insurance Co.*, 217 Ill. 2d 158, 840 N.E.2d 269 (2005), Sprint also argues that Illinois does not have a sufficient interest in this case to proceed with a 48-state class action under the law of Kansas. However, neither *Avery* nor *Gridley* contains any such rule.

In *Gridley*, the court held that a Louisiana resident's claims brought in Illinois on

10

behalf of a nationwide class should be dismissed on grounds of *forum non conveniens*. *Gridley*, 217 Ill. 2d at 171, 840 N.E.2d at 277-78. However, the *Gridley* court did not consider any class certification issues. *Gridley*, 217 Ill. 2d 158, 840 N.E.2d 269.

In *Avery*, the court held, "[A] plaintiff may pursue a private cause of action under the Consumer Fraud Act if the circumstances that relate to the disputed transaction occur primarily and substantially in Illinois." *Avery*, 216 Ill. 2d at 187, 835 N.E.2d at 853-54. However, *Avery* did not establish an "interest" test for multistate class actions. *Avery*, 216 Ill. 2d at 190, 835 N.E.2d at 855.

Adopting such an "interest" test would be directly contrary to *Miner v. Gillette Co.*, 87 Ill. 2d 7, 10-16, 428 N.E.2d 478, 480-83 (1981). In *Miner*, an Illinois plaintiff filed a class action complaint in Illinois on behalf of a nationwide class of consumers against the defendant, Gillette Company, in connection with the defendant's promotion of its "cricket" disposable butane lighters. *Miner*, 87 Ill. 2d at 10, 428 N.E.2d at 480. The Illinois Supreme Court allowed the Illinois plaintiff to maintain a nationwide class action in Illinois even though the defendant was a Delaware corporation with its headquarters in Massachusetts; the responses to the ad in question were directed to Minnesota; no aspect of the promotion took place in Illinois regarding non-Illinois residents; the unfulfilled requests came from persons in every state of the United States, the District of Columbia, Puerto Rico, and Canada; and only 12,000 of the 180,000 unfulfilled requests came from persons in Illinois. *Miner*, 87 Ill. 2d at 21-22, 428 N.E.2d at 485-86 (Ryan, J., dissenting). We will not presume that *Miner* has been overruled, absent a clear statement to that effect by the Illinois Supreme Court, and nothing in *Avery* or *Gridley* amounts to that clear statement. Accordingly, we find this argument to be without merit.

Finally, Sprint argues that the trial court abused its discretion in certifying the class because class certification is barred by a lack of commonality, intraclass conflicts, and an

inadequacy of representation. "Class certification is governed by section 2–801 of the Code of Civil Procedure (735 ILCS 5/2–801 (West 1998)), which is patterned after Rule 23 of the Federal Rules of Civil Procedure." *Avery*, 216 Ill. 2d at 125, 835 N.E.2d at 819. "Under section 2–801, a class may be certified only if the proponent establishes the four prerequisites set forth in the statute: (1) numerosity ('[t]he class is so numerous that joinder of all members is impracticable'); (2) commonality ('[t]here are questions of fact or law common to the class, which common questions predominate over any questions affecting only individual members'); (3) adequacy of representation ('[t]he representative parties will fairly and adequately protect the interest of the class'); and (4) appropriateness ('[t]he class action is an appropriate method for the fair and efficient adjudication of the controversy'). 735 ILCS 5/2–801 (West 1998)." *Avery*, 216 Ill. 2d at 125, 835 N.E.2d at 819.

"Decisions regarding class certification are within the sound discretion of the trial court and should be overturned only where the court clearly abused its discretion or applied impermissible legal criteria." *Avery*, 216 Ill. 2d at 125-26, 835 N.E.2d at 819. "However, '[a] trial court's discretion in deciding whether to certify a class action is not unlimited and is bounded by and must be exercised within the framework of the civil procedure rule governing class actions.' " *Avery*, 216 Ill. 2d at 126, 835 N.E.2d at 820 (quoting 4 A. Conte & H. Newberg, Newberg on Class Actions §13:62, at 475 (4th ed. 2002)).

As to the numerosity requirement, Sprint does not dispute that the class is so numerous that the joinder of all members would be impracticable. Accordingly, the first prerequisite for class certification is met. See 735 ILCS 5/2–801(1) (West 2002).

"In order to satisfy the second requirement of section 2–801 (a common question of fact or law predominates over other questions affecting only individual class members), it must be shown that 'successful adjudication of the purported class representatives' individual claims will establish a right of recovery in other class members.' " *Avery*, 216 Ill. 2d at 128,

12

835 N.E.2d at 821 (quoting *Goetz v. Village of Hoffman Estates*, 62 Ill. App. 3d 233, 236, 378 N.E.2d 1276, 1279 (1978)). "So long as there are questions of fact or law common to the class and these predominate over questions affecting only individual members of such class, the statutory requisite is met." *Steinberg v. Chicago Medical School*, 69 Ill. 2d 320, 338, 371 N.E.2d 634, 643 (1977). " 'A common question may be shown when the claims of the individual class members are based upon the common application of a statute or when the members are aggrieved by the same or similar conduct [citation] or a pattern of conduct [citations].' " *Clark v. TAP Pharmaceutical Products, Inc.*, 343 Ill. App. 3d 538, 548, 798 N.E.2d 123, 131 (2003) (quoting *Avery v. State Farm Mutual Automobile Insurance Co.*, 321 Ill. App. 3d 269, 280, 746 N.E.2d 1242, 1252-53 (2001), *aff'd in part & rev'd in part*, 216 Ill. 2d 100, 835 N.E.2d 801 (2005)). "A class action can properly be prosecuted where the defendants allegedly acted wrongfully in the same basic manner as to an entire class, and in such circumstances, the common class questions predominate the case, and the class action is not defeated." *Clark*, 343 Ill. App. 3d at 548, 798 N.E.2d at 131.

" ' "[A] class action will not be defeated solely because of some factual variations among class members' grievances." ' " *Clark*, 343 Ill. App. 3d at 548, 798 N.E.2d at 131 (quoting *Heastie v. Community Bank of Greater Peoria*, 125 F.R.D. 669, 675 (N.D. Ill. 1989) (quoting *Patterson v. General Motors Corp.*, 631 F.2d 476, 481 (7th Cir. 1980))). That some members of a class are not entitled to relief will not bar the class action. *Steinberg*, 69 Ill. 2d at 338, 371 N.E.2d at 643. After the litigation of common questions, questions that are peculiar to individual class members may be determined in ancillary proceedings. *Clark*, 343 Ill. App. 3d at 548, 798 N.E.2d at 131.

"Individual questions of injury and damages do not defeat class certification." *Clark*, 343 Ill. App. 3d at 549, 798 N.E.2d at 132. The fact that the class members' recoveries may be in different amounts, which must be determined separately, does not necessarily mean that

13

the common questions do not predominate. *Clark*, 343 Ill. App. 3d at 549, 798 N.E.2d at 132. If individual damage determinations are required, the court can utilize various procedures to determine damages, including creating subclasses. *Clark*, 343 Ill. App. 3d at 549, 798 N.E.2d at 132.

In the present case, the record reveals that the common question is whether Sprint's early termination fee is an illegal penalty. If the early termination fee is an illegal penalty, then Sprint has no right to charge or collect it and should pay it back. Sprint concedes that it charges the same $150 early termination fee to every customer who terminates service before the end of the term, regardless of when during the term the customer cancels.

Sprint allegedly acted wrongfully in the same basic manner toward the entire class–by charging an early termination fee that was an illegal penalty. Accordingly, there are common questions of law or fact that predominate over any questions affecting only individual members. See 735 ILCS 5/2–801(2) (West 2002); *Clark*, 343 Ill. App. 3d at 548, 798 N.E.2d at 131.

Turning to the adequacy-of-representation requirement, Sprint argues that Hall cannot adequately represent the interests of the absent class members because her pursuit of class claims will expose absent class members to potential judgments. According to Sprint, Hall's interest in pursuing her claims on behalf of a class conflicts with the interests of class members who do not want to be exposed to litigation as a result of her actions.

" 'The purpose of the adequate representation requirement is merely to ensure that all class members will receive proper, efficient, and appropriate protection of their interests in the presentation of the claim.' " *Clark*, 343 Ill. App. 3d at 550, 798 N.E.2d at 133 (quoting *Gordon v. Boden*, 224 Ill. App. 3d 195, 203, 586 N.E.2d 461, 466 (1991)).

"The test applied to determine adequacy of representation is whether the interests of those who are parties are the same as those who are not joined and

14

whether the litigating parties fairly represent those not joined. [Citation.] The attorney for the representative party 'must be qualified, experienced[,] and generally able to conduct the proposed litigation.' [Citation.] Additionally, [the representative party's] interest must not appear collusive." *Miner*, 87 Ill. 2d at 14, 428 N.E.2d at 482.

In the present case, Hall will fairly and adequately protect the interests of the class. See 735 ILCS 5/2–801(3) (West 2002). Hall's interest does not appear collusive, and it is apparent that her interests are the same as those of the absent class members–to recover the $150 early termination fee paid to Sprint, which was allegedly an unlawful penalty. See *Miner*, 87 Ill. 2d at 14, 428 N.E.2d at 482. In addition, the record amply demonstrates Hall's desire and ability to prosecute the claim vigorously on behalf of herself and the other class members, and no issue has been raised with respect to the qualifications, experience, and ability of Hall's counsel. See *Miner*, 87 Ill. 2d at 14, 428 N.E.2d at 482.

Sprint's argument that class litigation will expose class members to potential judgments as a result of Hall's actions is partly belied by the fact that class members are potentially liable for judgments as a result of their breaches of their contracts and not primarily because of Hall's actions. See *Walczak v. Onyx Acceptance Corp.*, 365 Ill. App. 3d 664, 679, 850 N.E.2d 357, 371 (2006). Hall's claims are not antagonistic to the class because she is in the same position as all putative class members–they all terminated their cell phone contracts before the end of their terms and paid the $150 early termination fee. See *Walczak*, 365 Ill. App. 3d at 679, 850 N.E.2d at 371. "[G]enerally, individual counterclaims or defenses do not render a case unsuitable for class action." *Walczak*, 365 Ill. App. 3d at 679, 850 N.E.2d at 371. Even if Sprint pursues such claims only against individuals who join in the class action, the trial court's finding would not be unreasonable because class members have the right to opt out of the class action lawsuit. See *Walczak*,

15

365 Ill. App. 3d at 679, 850 N.E.2d at 371; see also 735 ILCS 5/2–804 (West 2002) (addressing the exclusion of class members).

We turn then to the issue of whether a class action is an appropriate method for fairly and efficiently adjudicating the controversy. In deciding this issue, a court should consider whether "the class action (1) can best secure the economies of time, effort, and expense and promote a uniformity of decision or (2) can accomplish the other ends of equity and justice that class actions seek to obtain." *Clark*, 343 Ill. App. 3d at 552, 798 N.E.2d at 134.

In the present case, a class action is an appropriate method for fairly and efficiently adjudicating the controversy. See 735 ILCS 5/2–801(4) (West 2002). Initially, we note that our holding that the first three prerequisites of section 2–801 have been established makes it evident that the fourth requirement has been fulfilled as well. See *Clark*, 343 Ill. App. 3d at 552, 798 N.E.2d at 134. In addition, this is a consumer class action, which is "often the last barricade of consumer protection" (*Clark*, 343 Ill. App. 3d at 552, 798 N.E.2d at 134). Because a consumer class action provides restitution to the injured and deterrence to the wrongdoer, the ends of equity and justice are accomplished. See *Clark*, 343 Ill. App. 3d at 552, 798 N.E.2d at 134. Furthermore, because there are numerous class members and common questions, a class action serves the economies of time, effort, and expense and prevents possible inconsistent results. See *Clark*, 343 Ill. App. 3d at 552, 798 N.E.2d at 134. In this case, litigating the individual lawsuits would be a waste of judicial resources, and addressing the common issues in one class action would aid judicial administration. See *Clark*, 343 Ill. App. 3d at 552, 798 N.E.2d at 134.

### CONCLUSION

For the foregoing reasons, the order of the circuit court of Madison County certifying a 48-state class is affirmed.

16

Affirmed.


CHAPMAN and DONOVAN, JJ., concur.

NO. 5-05-0354

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

| | | |
|---|---|---|
| JESSICA HALL, Individually and on Behalf of Others Similarly Situated, | ) ) ) | Appeal from the Circuit Court of Madison County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 04-L-113 |
| SPRINT SPECTRUM L.P., d/b/a Sprint PCS Group, and SPRINTCOM, INC., d/b/a Sprint PCS Group, | ) ) ) ) ) | Honorable Nicholas G. Byron, |
| Defendants-Appellants. | ) | Judge, presiding. |

**Opinion Filed**: June 27, 2007

**Justices**: Honorable Bruce D. Stewart, J.

Honorable Melissa A. Chapman, J., and
Honorable James K. Donovan, J.,
Concur

**Attorneys for Appellants**

Frederic R. Klein, Steven A. Levy, Mary E. Anderson, Goldberg, Kohn, Bell, Black, Rosenbloom & Moritz, Ltd., 55 East Monroe Street, Suite 3700, Chicago, IL 60603; John L. Gilbert, Hinshaw & Culbertson, LLP, 156 North Main Street, Suite 206, Edwardsville, IL 62025; Michele Floyd, Reed, Smith, LLP, Two Embarcadero Center, Suite 2000, P.O. Box 7936, San Francisco, CA 94120-7936; Dominic Surprenant, Quinn, Emanuel, Urquhart, Oliver & Hedges, LLP, 865 South Figueroa Street, 10th Floor, Los Angeles, CA 90017

**Attorneys for Appellee**

Paul M. Weiss, Tod A. Lewis, Freed & Weiss, LLC, 111 West Washington Street, Suite 1331, Chicago, IL 60602; Malik R. Diab, Phillip A. Bock, Robert M. Hatch, Diab & Bock, LLC, 20 N. Wacker Drive, Suite 1741, Chicago, IL 60606; Jeffrey A.J. Millar, Bradley M. Lakin, Richard J. Burke, The Lakin Law Firm, P.C., 300 Evans Avenue, P.O. Box 229, Wood River, IL 62095-0229