# Illinois Official Reports

## Appellate Court

---

*Dancor Construction, Inc. v. FXR Construction, Inc.*, 2016 IL App (2d) 150839

---

| | |
|---|---|
| Appellate Court Caption | DANCOR CONSTRUCTION, INC., Plaintiff and Counterdefendant-Appellant and Cross-Appellee, v. FXR Construction, Inc., and DENNIS E. VITA, Defendants-Appellees and Cross-Appellants (FXR Construction, Inc., Counterplaintiff). |
| District & No. | Second District<br>Docket No. 2-15-0839 |
| Filed | September 29, 2016 |
| Decision Under Review | Appeal from the Circuit Court of Kane County, No. 12-L-487; the Hon. James R. Murphy, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Matthew D. Robinson, of Law Office of Matthew Robinson, of Geneva, for appellant.<br><br>Peter M. Storm, of Cooper, Storm & Piscopo, of Geneva, for appellees. |
| Panel | JUSTICE SPENCE delivered the judgment of the court, with opinion.<br>Presiding Justice Schostok and Justice McLaren concurred in the judgment and opinion. |

**OPINION**

¶ 1    Plaintiff, Dancor Construction, Inc. (Dancor), brought suit against defendants, FXR Construction, Inc. (FXR) and its owner, Dennis E. Vita, in Kane County pursuant to the forum-selection clause in the parties' contract. Dancor brought breach-of-contract and tort claims against defendants related to a construction project in New York. Meanwhile, in a New York court, FXR filed a mechanic's lien on the property and brought suit for breach of contract and unjust enrichment against Dancor, among others. The New York case was later dismissed.

¶ 2    Defendants moved to dismiss or transfer the Kane County case, arguing in part that New York was the better forum for the dispute. The circuit court denied defendants' motion, finding that the forum-selection clause designating Kane County was valid and enforceable.

¶ 3    Dancor filed amended and second amended complaints. Defendants moved to dismiss each, and the circuit court granted their motions in part, dismissing Dancor's tort counts for injurious falsehood and slander of title related to the construction project.

¶ 4    FXR then moved to dismiss or transfer the case or to reconsider the circuit court's prior order denying the motion to dismiss or transfer the case. FXR argued that New York law rendered the forum-selection clause void and unenforceable and that New York was the only proper forum. The circuit court agreed and dismissed the case to allow the action to be refiled in New York. This appeal followed. We affirm.

¶ 5                                    I. BACKGROUND

¶ 6    Dancor filed its complaint in Kane County on September 10, 2012. The complaint alleged as follows. Dancor was the general contractor for the construction of an AutoZone store (the Project) in Bronx County, New York, and it employed FXR as a subcontractor on the Project. The subcontract was for $169,826.61. Dancor removed FXR from the Project and brought in a replacement subcontractor to complete construction. After paying FXR, FXR's replacement, and other subcontractors, Dancor had spent a total of $176,481.88, or about $6600 more than the agreed-upon contract price. FXR recorded a mechanic's lien against the Project property on August 29, 2012, seeking $104,544.11.

¶ 7    Dancor attached the parties' contract to the complaint. Section XXIX of the contract, titled "Venue and Choice of Law" (the forum-selection clause), provided that the parties agreed that the contract was executed in Kane County and that it would be governed by Illinois law. Further, it stated that "[a]ny claims, lawsuits, disputes or claims arising out of or relating to this agreement shall be litigated in Kane County, Illinois."

¶ 8    Dancor's three-count complaint alleged breach of contract (count I) and two torts, injurious falsehood (count II) and interference with prospective business advantage (count III). In count I, Dancor alleged that FXR failed to meet reasonable deadlines, provide sufficient manpower, and timely complete tasks on the Project. Consequently, Dancor removed FXR and hired another firm to complete the Project. In count II, Dancor alleged that defendants recorded a lien against the Project site for unpaid work completed. Dancor alleged that the lien's statement regarding the amount unpaid ($104,544.11) was not true, that defendants made the statement knowing that it was false, and that they made the statement with the intent that others rely on it. Dancor further alleged that a reasonable person or company would be "highly

offended" by an accusation that it failed to pay in excess of $100,000 and that defendants intended the publication of the lien to result in pecuniary harm to Dancor.

¶ 9        Shortly after Dancor filed its complaint, FXR filed its complaint in New York on October 24, 2012, against, *inter alios*, Dancor, to foreclose its mechanic's lien (the New York action). FXR alleged that, as a subcontractor, it had agreed to provide certain services for Dancor on the Project. FXR continued that it completed its performance of the contract and was owed a total of $171,926.61. It had received $67,382.50 and alleged that Dancor still owed $104,544.11. Dancor breached their contract and was unjustly enriched in the amount of $104,544.11 by not paying FXR the full amount owed.

¶ 10       Back in the Kane County litigation, on December 26, 2012, defendants filed a motion to dismiss Dancor's complaint or transfer the case. In their motion, defendants alleged that New York law required that the action be brought in a New York court. Defendants further argued that the defendants in the New York action, aside from Dancor, did not have minimum contacts with Illinois sufficient to bring the case here. Finally, defendants argued that Bronx County in New York was the best forum to resolve the legal issues related to the Project, and under the doctrine of *forum non conveniens*, they sought that the case be transferred to New York.

¶ 11       Dancor responded by citing the forum-selection clause that designated Kane County. Dancor argued that both New York and Illinois public policy favor enforcement of forum-selection clauses in contracts and that the forum-selection clause here was reasonable and should be enforced.

¶ 12       The circuit court held a hearing on the motion to dismiss or transfer. Thereafter, on February 20, 2013, it denied the motion, finding that the forum-selection clause in the parties' contract was valid and that venue in Kane County was appropriate.

¶ 13       On April 26, 2013, defendants moved to dismiss counts II and III of the complaint. They argued that count II was based on insufficient conclusions by Dancor, not well-pled facts. They argued that count III, which was based on the allegations of count II, was likewise defective. On June 6, 2013, the circuit court granted defendants' motion to dismiss counts II and III and granted Dancor leave to amend its complaint.

¶ 14       Dancor filed an amended complaint on June 18, 2013. The amended complaint again contained three counts: count I for breach of contract, count II for injurious falsehood, and count III for interference with prospective business advantage. Under count III, Dancor alleged that defendants claimed they were owed $104,544.11, that they knew they were not actually owed that amount, and that they declared they were owed that amount with intent that Dancor incur pecuniary harm.

¶ 15       Around this time, the New York court heard a motion to dismiss FXR's complaint in the New York action. On July 18, 2013, it entered an order dismissing the complaint, explaining as follows:

> "Here, the Plaintiff contracted the venue for lawsuits and failed to meet its burden in establishing it was unreasonable, unjust, in contravention of public policy, invalid due to fraud or overreaching, or it is shown that a trial in the selected forum would be so gravely difficult that the challenging party would, for all practical purposes, be deprived of its day in court."

The New York court continued that an action to determine the obligations under the mechanic's lien and to determine the appropriateness of the forum-selection clause in the parties' contract had been commenced in Kane County before the New York action was filed.

¶ 16    Back in Kane County, defendants moved to dismiss Dancor's amended complaint. On September 5, 2013, the circuit court dismissed count I as to Vita, dismissed count II without prejudice, informed Dancor that if it repled count II, it should replead it as a "slander of title" claim, and dismissed count III with prejudice.

¶ 17    Dancor filed a second amended complaint on November 13, 2013. The second amended complaint contained six counts. Counts I and II were for breach of contract against FXR and Vita, respectively; counts III and IV were for slander of title against FXR and Vita, respectively; and counts V and VI were related to mechanic's-lien liability under New York law against FXR and Vita, respectively. In counts III and IV, Dancor alleged that FXR did not complete its contractual duties and that Dancor had to bring in a replacement subcontractor to complete the Project, costing Dancor $95,106. Regarding defendants' mechanic's lien against the Project property for money they claimed they were owed under the contract, Dancor alleged that the statement of the amount owed was false. Dancor alleged that defendants knew or should have known that it was false because they knew or should have known that they did not complete their work on the Project. Yet, Dancor alleged, defendants published the mechanic's lien when they knew or should have known that the lien would result in pecuniary damage to Dancor. The mechanic's lien clouded the title to $115,000 of Dancor's funds.

¶ 18    On December 20, 2013, defendants moved to strike and dismiss the second amended complaint. In part, the motion argued that counts III and IV failed to state a claim for slander of title, because the counts failed to allege facts showing that the lien was false or malicious, that Dancor incurred special damages, or that the lien made any statements about real property owned by Dancor. Rather, defendants argued, Dancor again relied on insufficient conclusions, not well-pled facts.

¶ 19    On February 14, 2014, the circuit court ruled on defendants' motion to strike and dismiss the second amended complaint. It denied the motion as to count I (breach of contract against FXR). It granted the motion with prejudice as to counts II through VI and, pursuant to Illinois Supreme Court Rule 304(a) (eff. Feb. 26, 2010), found no reason to delay enforcement or appeal of its order.

¶ 20    On March 13, 2014, Dancor moved to (1) vacate the Rule 304(a) language in the February 14, 2014, order and (2) grant Dancor leave to file an amended complaint to incorporate its previously dismissed injurious-falsehood count, which it had not included in the second amended complaint. On the same day, the court entered an order vacating the Rule 304(a) language. On March 26, after argument on the issue, the court denied leave to reassert the injurious-falsehood count.

¶ 21    FXR answered count I of the second amended complaint on April 25, 2014. Along with its answer, FXR filed a counterclaim alleging that Dancor was unjustly enriched and breached their contract. The case proceeded to discovery, and a bench trial was eventually scheduled for August 26 and 27, 2015.

¶ 22    On May 15, 2015, FXR moved to dismiss or transfer the case pursuant to sections 2-619(a)(1) and (a)(9) of the Code of Civil Procedure (735 ILCS 5/2-619(a)(1), (a)(9) (West 2014)). FXR argued that New York law rendered the forum-selection clause void and unenforceable. It also pointed out that Illinois law substantially mirrored New York law on the

enforcement of forum-selection clauses in construction contracts. Accordingly, FXR requested that the circuit court transfer the case to New York or, in the alternative, dismiss the case without prejudice.

¶ 23    Dancor responded to the motion to dismiss or transfer by arguing, in part, that the enforceability of the forum-selection clause had already been decided in 2013, when the New York action was dismissed and the New York court held that the forum-selection clause was valid and enforceable. Dancor therefore argued that FXR was collaterally estopped from relitigating the issue of the forum-selection clause's validity and enforceability.

¶ 24    Before the circuit court ruled on FXR's motion to dismiss or transfer, FXR moved to reconsider the circuit court's February 20, 2013, order, which had denied defendants' first motion to dismiss or transfer. FXR argued that the court had erred in finding the forum-selection clause valid and enforceable.

¶ 25    On July 20, 2015, the circuit court entered an order addressing both FXR's motion to dismiss or transfer and its motion to reconsider. The court found that, with respect to the original motion to dismiss or transfer, it had not been advised by either party of section 757 of the New York General Business Law (N.Y. Gen. Bus. Law § 757 (McKinney 2012)), which declares void and unenforceable any choice-of-law or forum-selection provision requiring application of another state's law to a New York construction contract. It rejected Dancor's argument that the New York court's order collaterally estopped FXR's challenge to the forum-selection clause, stating that the order did not have a binding effect on this or any other action. Rather, it reasoned, the New York court deferred to Illinois and was similarly uninformed of section 757. The circuit court found that section 757 applied to the contract between Dancor and FXR and that, consequently, the forum-selection clause was void and unenforceable. While it found that the clause could be severed under the terms of the contract, it also found that the case would be more appropriately and conveniently litigated in New York.

¶ 26    The circuit court acknowledged that trial was set to commence within the next 60 days[1] and that the circuit court's local rules generally required dispositive motions to be filed no later than 60 days before trial. Here, both parties incurred costs preparing for trial in Illinois, and therefore both sides would be prejudiced by further delay. Nevertheless, the court reasoned, its prior order was in error because of a misapplication, or lack of citation, of applicable law, and the order was interlocutory and could be corrected at any time before trial. Accordingly, the court granted FXR's motion to dismiss so that the case could be refiled in New York.

¶ 27    Dancor filed a timely notice of appeal on August 12, 2015, pursuant to Illinois Supreme Court Rule 301 (eff. Feb. 1, 1994). Defendants timely cross-appealed.

---

[1]On June 18, 2015, the trial was rescheduled from August 26 and 27 to September 9 and 10, 2015. We note, however, that the local rule requires dispositive motions to be filed no later than 120 days prior to trial, not 60. 16th Judicial Cir. Ct. R. 6.06(a) (May 5, 2008). Sixty days is required for counterclaims, actions over, contribution claims, and third-party complaints. 16th Judicial Cir. Ct. R. 6.06(b) (May 5, 2008).

## II. ANALYSIS

### A. Jurisdiction

Defendants assert that this court lacks jurisdiction to hear Dancor's appeal. This court has an obligation to consider its jurisdiction at any time, and if jurisdiction is lacking, we must dismiss the appeal. *Anderson Dundee 53, L.L.C. v. Terzakis*, 363 Ill. App. 3d 145, 152-53 (2005). Our obligation to consider whether we possess jurisdiction would exist even if defendants had not raised the issue. *Little Texas, Inc. v. Buchen*, 319 Ill. App. 3d 78, 81 (2001).

Dancor filed its notice of appeal pursuant to Rule 301, which allows appeals from final orders. Likewise, its statement of jurisdiction on appeal invokes Rule 301. Defendants argue that the circuit court's July 20, 2015, order was not a final order because it dismissed the case under *forum non conveniens*, with leave to refile the case in New York. Defendants therefore contend that Dancor had to appeal pursuant to Illinois Supreme Court Rule 306(a)(2) (eff. July 1, 2014), which provides that a party may petition for leave to appeal from an order allowing or denying a motion to dismiss on the grounds of *forum non conveniens*.

Contrary to defendants' assertion, the circuit court did not dismiss the case pursuant to the doctrine of *forum non conveniens*. Rather, the circuit court granted a section 2-619 motion to dismiss based on an affirmative matter, that is, applicable law that rendered the forum-selection clause void and unenforceable and required that the case be brought in New York. Whether to dismiss based on a forum-selection clause—which requires consideration of contract principles—is a separate issue from the noncontractual considerations of *forum non conveniens*, and to permit an appeal under Rule 306(a)(2) on a forum-selection issue would impermissibly expand the scope of the rule by usurping the supreme court's rulemaking authority. *Ferguson v. Bill Berger Associates, Inc.*, 302 Ill. App. 3d 61, 69 (1998). Rather, a dismissal pursuant to a forum-selection clause is a final order for purposes of Rule 301. *Fabian v. BGC Holdings, LP*, 2014 IL App (1st) 141576, ¶¶ 12-13 (dismissal based on forum-selection clause, even without prejudice to refiling in another state, was a final order because it terminated the plaintiff's right to bring those claims in Illinois). Accordingly, we have jurisdiction.

### B. Dancor's Arguments on Appeal

Dancor raises several issues on appeal. Those issues are (1) whether the New York court's order precluded litigation of the forum-selection clause, (2) whether the circuit court erred in dismissing the case under *forum non conveniens*, (3) whether the circuit court erred in granting a dispositive motion less than 120 days before trial, in violation of the circuit court's local rules, and (4) whether the circuit court erred in dismissing Dancor's tort claims for injurious falsehood and slander of title.

Dancor's first issue concerns the New York action. The New York court dismissed that case on July 18, 2013, in an order granting the defendants' (including Dancor's) motion to dismiss FXR's complaint, on the basis of the forum-selection clause. In its order, the New York court reasoned as follows. A contractual forum-selection clause is *prima facie* valid and enforceable unless shown by the challenging party to be unreasonable, unjust, in contravention of public policy, or invalid due to fraud or overreach, or unless the selected forum would effectively deprive the challenging party of its day in court. The court cited section 41 of New York's Lien Law (N.Y. Lien Law § 41 (McKinney 2012)). FXR had contracted for venue to be in Illinois, and it had not met its burden to show that the contract's forum-selection clause was

unreasonable, unjust, in contravention of public policy, or invalid due to fraud or overreach, or that it would be effectively deprived of its day in court.

¶ 36 Dancor argues that the New York court's order held that the forum-selection clause was valid and enforceable. Dancor further argues that the New York court did not dismiss based on the pendency of this case and could not defer to the circuit court, which had yet to issue a final order on the issue of the forum-selection clause's validity.

¶ 37 Dancor continues that the New York court's order has preclusive effect under the doctrine of collateral estoppel. According to Dancor, Illinois law requires only three elements for the application of collateral estoppel: (1) identical issues, (2) a final judgment on the merits, and (3) that the party against whom estoppel is asserted was a party to the prior adjudication. Dancor asserts that here the parties were the same, the New York order was a final order, and the issue—that is, the validity and enforceability of the forum-selection clause—was the same. Dancor concludes that the parties are therefore bound by the New York court's holding on the issue of the forum-selection clause's validity and that FXR was collaterally estopped from raising the issue again in the circuit court.

¶ 38 Dancor turns to its second argument, that the circuit court erred in dismissing this case under the doctrine of *forum non conveniens*. Dancor argues as follows. FXR's motion to dismiss did not contain any analysis of the public- and private-interest factors that would favor New York as the proper forum. Nor did the circuit court analyze these factors in its order granting FXR's motion. Because no factors supported a transfer to New York, the dismissal on the basis of *forum non conveniens* was in error. Moreover, New York law holds that, where a litigant has "bonded over" a lien on real property, the subject of the litigation is not the property but rather the bond, to which the lien is now attached. See *Shepherd Showcase, Inc. v. Pekala*, 526 N.Y.S.2d 294, 294 (App. Div. 1988). Under *Pekala*, then, the situs of the real property in this case—New York—does not determine the proper forum.

¶ 39 With respect to the third argument, that the circuit court improperly granted a dispositive motion less than 120 days before trial, Dancor argues as follows. Local Rule 6.06 requires that any dispositive motion be brought no later than 120 days prior to trial. FXR violated this rule when it filed its motion to dismiss or transfer on May 15, 2015, and trial was set to begin on August 26, 2015. Local rules are meant to be followed and are not mere suggestions or guidelines. Rather, they have the force of statutes and are binding on courts and parties.

¶ 40 Finally, Dancor argues that the circuit court erred in dismissing its tort claims. Dancor argues as follows. First, it stated a claim for injurious falsehood under the Restatement (Second) of Torts. A defendant is liable for a false statement harmful to the pecuniary interest of another if the defendant either intended or knew that the publication was likely to result in harm and the defendant either knew that the statement was false or recklessly disregarded the truth. See *Contract Development Corp. v. Beck*, 255 Ill. App. 3d 660, 665 (1994). Here, Dancor alleged that the statement in the mechanic's lien was knowingly false, alleged that defendants intended that the publication of the statement cause Dancor pecuniary harm, and alleged facts supporting these elements, including the payments that were made under the contract and defendants' publication of the statement.

¶ 41 Dancor acknowledges that Illinois has not expressly adopted the tort of injurious falsehood. However, Dancor urges that, if necessary, this court should adopt the tort, noting that some legal scholars have recommended its adoption.

¶ 42    Dancor continues that, in addition to stating a claim for injurious falsehood, it stated a claim for slander of title. Illinois courts follow the Restatement (Second) of Torts to specify the elements necessary for a *prima facie* case of slander of title. See *id.* The three elements of slander of title are (1) a false and malicious publication (2) of words that disparage a person's title to property (3) that result in special damages. *Id.* Dancor argues that it pled a false and malicious publication when it alleged that defendants' statement that Dancor owed them $104,544.11 was knowingly false. Dancor also pled that defendants used words that disparaged its title to property. Defendants' lien was detached from the real property and attached to Dancor's bond, and Dancor was consequently forced to put up $115,000 pursuant to its contract with AutoZone. The lien on Dancor's bond also clouded the title to these funds. Moreover, Dancor pled special damages in the sum of $115,000—the money it had to place in escrow to "bond over" the lien.

¶ 43    Last, Dancor argues that it stated a claim of "*prima facie* tort." Dancor argues that the concept of "*prima facie* tort" provides a remedy for tort injuries that do not conveniently fit into a defined category. Citing English common law from the 1800s, Dancor argues that it is a well-established common-law principle that a cause of action will lie for maliciously giving false information. Dancor continues that Illinois follows the common-law *prima facie* tort doctrine, as evidenced by our supreme court's approving citation of *Aikens v. Wisconsin*, 195 U.S. 194 (1904), and statement that it is a "basic concept in the law that one who intentionally harms another without excuse is liable for the harm." *Knierim v. Izzo*, 22 Ill. 2d 73, 83 (1961). Here, Dancor alleged that defendants knowingly and purposefully recorded a false lien in order to harm Dancor in retaliation for removing them from the Project. Accordingly, Dancor argues, this was enough to avoid a motion to dismiss for failure to state a cause of action in tort.

¶ 44    Defendants respond as follows. First, the circuit court acted within its discretion when it dismissed the case in favor of a New York forum. In particular, defendants argue that section 757 of the New York General Business Law (N.Y. Gen. Bus. Law § 757 (McKinney 2012)) rendered the forum-selection clause void and unenforceable. The forum-selection clause reads as follows:

> "The parties agree that this agreement was executed in Kane County, Illinois and shall be governed by the law of the State of Illinois. Any claims, lawsuits, disputes or claims arising out of or relating to this agreement shall be litigated in Kane County, Illinois."

¶ 45    Defendants note that, despite the language of the forum-selection clause, the very next page of the contract states that the agreement was executed in Santa Rosa Beach, Florida, not in Kane County, Illinois. In any event, defendants argue that the clause violates section 757(1) of the New York General Business law, which reads as follows:

> "The following provisions of construction contracts shall be void and unenforceable:
>
> 1. A provision, covenant, clause or understanding in, collateral to or affecting a construction contract, with the exception of a contract with a material supplier, that makes the contract subject to the laws of another state or that requires any litigation, arbitration or other dispute resolution proceeding arising from the contract to be conducted in another state." N.Y. Gen. Bus. Law § 757(1) (McKinney 2012).

Defendants cite *HVS, LLC v. Fortney & Weygandt, Inc.*, 17 N.Y.S.3d 285, 286 (Sup. Ct. 2015), where a New York trial court enforced section 757 to hold a forum-selection provision for Cuyahoga County, Ohio, void and unenforceable.

¶ 46    Defendants note that their contract with Dancor concerned construction that took place in New York. Therefore, defendants argue, section 757 applied and rendered the forum-selection clause void and unenforceable. Although the circuit court initially found the forum-selection clause valid, it reconsidered its order and dismissed the case on the basis that the forum-selection clause was void.

¶ 47    Defendants continue that Illinois law is nearly identical to New York law on the enforceability of forum-selection clauses in construction contracts. They cite section 10 of the Building and Construction Contract Act (Building Act) (815 ILCS 665/10 (West 2014)), which provides:

> "A provision contained in or executed in connection with a building and construction contract to be performed in Illinois that makes the contract subject to the laws of another state or that requires any litigation, arbitration, or dispute resolution to take place in another state is against public policy. Such a provision is void and unenforceable."

Defendants argue that section 10 of the Building Act demonstrates that Illinois law, just like New York law, prohibits the litigation of construction contracts outside of the state where the construction took place. To treat the New York law differently would be "quite anomalous and a violation of comity."

¶ 48    Defendants turn from section 757's applicability to Dancor's reasons why the forum selection clause should be upheld regardless. First, defendants argue that the New York court's order does not collaterally estop litigation of the forum selection-clause here. Defendants point to the New York court's order, in which it stated that "the action to determine the payment objections under the Mechanics' Lien and whether the forum selection in Illinois is appropriate was commenced prior and/or determined to [*sic*] the filing in New York." They also deny that the New York court found the forum-selection clause valid. Instead, they argue, the court merely found that the forum-selection clause was not unreasonable, in contravention of public policy, or otherwise invalid. Defendants postulate that, had the New York court been presented with section 757, it would have concluded differently.

¶ 49    Defendants continue that there is no case law requiring that an Illinois court honor the decision of another state court dismissing a case under *forum non conveniens* or pursuant to a forum-selection clause. They argue that a court from one state lacks the power to transfer a case to another state's court system. See *Fennell v. Illinois Central R.R. Co.*, 2012 IL 113812, ¶ 13. Accordingly, New York could not have transferred the case to Illinois. Furthermore, collateral estoppel can apply only to separate and consecutive actions. *Nowak v. St. Rita High School*, 197 Ill. 2d 381, 389-90 (2001). Yet, they argue that this case is not separate from the New York action. Rather, the two proceedings are two stages of one action.

¶ 50    Further, defendants argue that the New York court's order was not a final judgment on the merits, which is one of the necessary elements for collateral estoppel to apply. They argue that a dismissal based upon a forum-selection clause is not an adjudication on the merits. Further, a final judgment is a determination of the issue presented that ascertains and fixes absolutely the rights of the parties. See *Hernandez v. Pritiskin*, 2012 IL 113054, ¶ 47. Defendants argue that, simply, an order declining jurisdiction is not a final judgment. They assert that the New York court's order did nothing more than decline to exercise jurisdiction, in the erroneous belief that the forum-selection clause was valid and enforceable. The order did not bear on whether

Dancor was liable to FXR under FXR's mechanic's lien claim or determine the rights of any party. Thus, collateral estoppel did not apply.

¶ 51    Defendants also argue that the circuit court had discretion to grant the motion to dismiss less than 120 days prior to trial. Local Rule 6.06 provides that "[a]ll case or claim dispositive motions, other than those arising during trial, will be filed for *** setting no longer than 120 days before the designated trial date except by leave of court upon good cause shown." 16th Judicial Cir. Ct. R. 6.06(a) (May 5, 2008). Defendants argue that the rule gave the circuit court discretion to hear FXR's motion to dismiss. Nevertheless, defendants also argue that the motion to dismiss was not really a dispositive motion—rather it was a motion to reconsider and transfer. The circuit court did not dismiss the case with prejudice, and therefore its decision was not on the merits. Defendants further argue that Dancor was not prejudiced because it had time to respond to FXR's motion. Illinois courts have held that a violation of a local notice rule does not prejudice a party who had sufficient time to respond. See *Premier Electrical Construction Co. v. American National Bank of Chicago*, 276 Ill. App. 3d 816, 834 (1995) (holding that a 6-day delay between service and hearing on motion for summary judgment—as opposed to 10 days required by local rule—was not substantial and affirming despite the technical violation).

¶ 52    Defendants turn next to the application of *forum non conveniens*. Defendants argue that both the private- and public-interest factors under *forum non conveniens* favored a transfer to New York and that, contrary to Dancor's contention, FXR did analyze the private- and public-interest factors. With respect to the private-interest factors, it was undisputed that the case's only connection to Illinois was Dancor's office in the state. All of the construction was performed in New York. The witnesses (including the other subcontractors) and documents, the property, and the building are all in New York. Thus, the private-interest factors clearly favored New York as the proper forum. The public-interest factors likewise favored New York. New York has an interest in adjudicating a construction dispute that occurred within its borders. Section 507 of the New York Civil Practice Law and Rules (N.Y. C.P.L.R. 507 (McKinney 2012)) provides that, where the judgment demanded would affect the title, use, or possession of real property, the trial should take place in a county in which any part of the subject of the action is situated. A mechanic's lien encumbers real property, and therefore an action to foreclose such a lien must be brought in the county where the real property is located. *Edward Joy Co. v. McGuire & Bennett, Inc.*, 608 N.Y.S.2d 26, 26 (App. Div. 1993). Further, section 757 of the New York General Business Law evinces a strong public policy to litigate in New York any dispute over New York construction projects. N.Y. Gen. Bus. Law § 757 (McKinney 2012).

¶ 53    Defendants argue that, in contrast to section 757 of the New York General Business Law, section 41 of the New York State Lien Law is not relevant to this case. Section 41 is not a venue statute but rather allows a claimant to enforce a mechanic's lien against either the property or the "person liable for the debt upon which the lien is founded" in any court that has jurisdiction. N.Y. Lien Law § 41 (McKinney 2012). Therefore, section 757 of the New York General Business Law controls.

¶ 54    Defendants turn to the circuit court's section 2-615 dismissal of Dancor's tort claims. They argue that the dismissals were proper as follows. First, Dancor waived its claim for injurious falsehood by failing to replead or incorporate that count in its second amended complaint. They argue that, nevertheless, that count failed to state a claim for injurious falsehood. Illinois

has not formally recognized the tort of injurious falsehood. Pursuant to section 623A of the Restatement (Second) of Torts, the tort is intended to protect economic interests, that is, it is directed against disparaging comments about the quality of what the plaintiff sells or the character of its business. Restatement (Second) of Torts § 623A (1977); *Kolegas v. Heftel Broadcasting Corp.*, 217 Ill. App. 3d 803, 811 (1991). Here, Dancor did not allege that defendants made any disparaging comments about its business, products, or services. Even if the tort were recognized and had a broader definition, Dancor failed to allege facts to support that defendants knew that the statement in the mechanic's lien they filed was false.

¶ 55    With respect to Dancor's slander-of-title claim, defendants continue that Dancor again failed to plead the elements necessary to maintain a cause of action. A slander-of-title claim requires that a plaintiff prove a false and malicious publication that disparages a person's title to property and results in special damages. However, Dancor pled only a conclusion that defendants did not have a reasonable belief that they were entitled to a lien. Further, Dancor did not own the real property at issue in this case. Dancor cannot claim slander of title when it did not have title to the property. Moreover, Dancor did not incur special damages. The bond that Dancor posted and held in escrow would be returned to it if the lien were ultimately found unwarranted. The cost of posting the lien and litigating its merits are ordinary expenses, not special damages.

¶ 56    Finally, with respect to Dancor's *prima facie* tort argument, defendants respond that Dancor failed to raise this claim in the circuit court. Even if not forfeited, the claim is a facsimile of its injurious-falsehood and slander-of-title claims, which were not supported by sufficient pleadings.

¶ 57                    C. Resolution of Dancor's Appeal

¶ 58    The circuit court dismissed various counts of Dancor's amended and second amended complaints, under sections 2-615 and 2-619, on September 5, 2013, and February 14, 2014, respectively. It also granted a section 2-619 motion to dismiss the case on July 20, 2015, holding that the forum-selection clause was void and unenforceable. A section 2-615 motion admits all well-pled facts and attacks the legal sufficiency of the complaint, whereas a section 2-619 motion admits the legal sufficiency of the complaint but raises defects, defenses, or other affirmative matters. *La Salle National Bank v. City Suites, Inc.*, 325 Ill. App. 3d 780, 789 (2001). We review a dismissal under either section *de novo*. *Provenzale v. Forister*, 318 Ill. App. 3d 869, 874 (2001).

¶ 59    We first address whether the New York court's order precluded the circuit court from dismissing the case based on the forum-selection clause. In other words, the issue is whether FXR was collaterally estopped from challenging the validity and enforceability of the forum-selection clause.

¶ 60    Collateral estoppel, also known as issue preclusion, is a branch of *res judicata*. *Wakehouse v. Goodyear Tire & Rubber Co.*, 353 Ill. App. 3d 346, 351 (2004). Collateral estoppel is an affirmative defense and is forfeited on appeal if not raised below. *Midwest Physician Group, Ltd. v. Department of Revenue*, 304 Ill. App. 3d 939, 952 (1999); *cf. People v. Anderson*, 2013 IL App (2d) 121346, ¶¶ 13-14 (normally, collateral estoppel is an affirmative defense that is forfeited if not pled, but it may be first raised on appeal if unavailable in the trial court). The doctrine, if it applies, bars relitigation of issues decided in a prior action. *Wakehouse*, 353 Ill. App. 3d at 351.

¶ 61    In order for collateral estoppel to apply, the party seeking to apply it must establish that (1) the issue at hand is identical to the one in a prior action, (2) there was a prior, final adjudication on the merits, and (3) the party against whom preclusion is sought was a party to or in privity with a party to the prior action. *In re A.W.*, 231 Ill. 2d 92, 99 (2008). Moreover, the issue had to have been actually and necessarily litigated in the prior action. *LaSalle Bank National Ass'n v. Village of Bull Valley*, 355 Ill. App. 3d 629, 636 (2005). Collateral estoppel is an equitable doctrine, and even if the threshold elements are established, the doctrine will not be applied if it would result in injustice. *Edmonds v. Illinois Workers' Compensation Comm'n*, 2012 IL App (5th) 110118WC, ¶ 21. The party against whom estoppel is sought must have had both a full and fair opportunity and an incentive to litigate the issue in the prior proceeding. *Id.*

¶ 62    Here, in response to FXR's motion to dismiss, Dancor argued that the New York action precluded litigation of the forum-selection clause's validity and enforceability. Dancor therefore has not forfeited its argument on appeal. Dancor argues that all three elements of collateral estoppel are met here, but the crucial determination is whether the New York court issued a final judgment on the merits. If the New York action did not produce a final judgment on the merits, there was no basis to preclude litigation of the forum-selection clause in the circuit court.

¶ 63    Under the full faith and credit clause of the United States Constitution (U.S. Const., art. IV, § 1 ("Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State.")), the doctrine of collateral estoppel extends to judgments entered in foreign states. *Allianz Insurance Co. v. Guidant Corp.*, 387 Ill. App. 3d 1008, 1021 (2008). This clause requires that we give the judgment of another state "at least the *res judicata* effect that the sister state rendering the judgment would give to it." *Morris B. Chapman & Associates, Ltd. v. Kitzman*, 193 Ill. 2d 560, 565 (2000). We must look to the forum state's *res judicata* law to determine what preclusive effect, if any, that state would give the judgment. *Id.* (looking to Missouri law). However, at least one court has held that the full faith and credit clause does not necessarily prevent Illinois from according greater effect to a foreign state's judgment. *Finley v. Kesling*, 105 Ill. App. 3d 1, 7 (1982). That is, the full faith and credit clause does not bar Illinois from applying its own rules of collateral estoppel to preclude relitigation of an issue where, for example, New York would not. *Id.*

¶ 64    Under New York law, collateral estoppel precludes a party from relitigating an issue " 'clearly raised in a prior action or proceeding and decided against that party or those in privity.' " *Church v. New York State Thruway Authority*, 791 N.Y.S.2d 676, 678-79 (App. Div. 2005) (quoting *Ryan v. New York Telephone Co.*, 467 N.E.2d 487, 500 (N.Y. 1984)). The party seeking to apply the doctrine must show that the identical issue was necessarily decided in the prior action, and the party opposing application of the doctrine may demonstrate the absence of a full and fair opportunity to contest the prior determination. *Id.* at 679. A final judgment is necessary for collateral estoppel to apply. *Id.*

¶ 65    Importantly, New York applies collateral estoppel only to issues of fact, not law. *Abreu v. Coughlin*, 555 N.Y.S.2d 889, 891 (App. Div. 1990); *In re Department of Personnel v. City Civil Service Comm'n*, 462 N.Y.S.2d 878, 879 (App. Div. 1983). Further, New York has held that the issue of a forum-selection clause's applicability is a question of law and is therefore not barred by the doctrine of collateral estoppel. *Sterling National Bank v. Eastern Shipping Worldwide, Inc.*, 826 N.Y.S.2d 235, 237 (App. Div. 2006). Interpretations of unambiguous contract provisions, such as the forum-selection clause in *Sterling National Bank*, are

questions of law. *Id.*; *Taussig v. Clipper Group, L.P.*, 787 N.Y.S.2d 10, 11 (App. Div. 2004) ("The interpretation of an unambiguous contract is a question of law for the court ***."). Accordingly, under New York law, the issue of whether the forum-selection clause here was valid and enforceable was a question of law and cannot be the basis for collateral estoppel. *Sterling National Bank*, 826 N.Y.S.2d at 237; see *Lischinskaya v. Carnival Corp.*, 865 N.Y.S.2d 334, 337 (App. Div. 2008) (forum-selection clause's enforceability under federal maritime law was a question of law).

¶ 66     Nor does Illinois law provide greater effect and preclude litigation of the forum-selection clause. Collateral estoppel in Illinois requires a final judgment on the merits, but a dismissal for improper venue is not a final judgment on the merits. Ill. S. Ct. R. 273 ("[A]n involuntary dismissal of an action, *other than* a dismissal for lack of jurisdiction, *for improper venue*, or for failure to join an indispensable party, operates as an adjudication on the merits." (Emphases added.)); see *Richter v. Prairie Farms Dairy, Inc.*, 2015 IL App (4th) 140613, ¶ 34 (a dismissal order that otherwise specified that it was not on the merits was not on the merits). Therefore, there is no basis in New York or Illinois law to hold that the New York action precluded litigation of the forum-selection clause.

¶ 67     Having held that the circuit court was free to examine the validity and enforceability of the forum-selection clause, we turn to examine whether, in fact, the circuit court was correct in holding that the clause was void and unenforceable.

¶ 68     Dancor argues that the clause was valid and enforceable, citing section 41 of the New York Lien Law (N.Y. Lien Law § 41 (McKinney 2012)). Defendants counter that the controlling law is actually section 757 of the New York General Business Law (N.Y. Gen. Bus. Law § 757 (McKinney 2012)), which, they argue, renders the clause void and unenforceable.

¶ 69     Forum selection and choice of law are separate issues. *Brandt v. MillerCoors, LLC*, 2013 IL App (1st) 120431, ¶ 15. Under Illinois law, we may void a forum-selection clause if it would violate a fundamental Illinois public policy. *Maher & Associates, Inc. v. Quality Cabinets*, 267 Ill. App. 3d 69, 75 (1994). Generally, to determine whether a forum-selection clause is enforceable, Illinois courts have applied a multifactor test to determine whether the clause is reasonable. See *IFC Credit Corp. v. Rieker Shoe Corp.*, 378 Ill. App. 3d 77, 86 (2007) (considering (1) the law governing the formation and construction of the contract, (2) the residency of the parties, (3) the place of execution or performance of the contract, (4) the location of the parties, (5) the inconvenience of the location, and (6) the parties' relative bargaining positions); *Calanca v. D&S Manufacturing Co.*, 157 Ill. App. 3d 85, 88 (1987) (same).

¶ 70     In *Rieker Shoe Corp.*, the court addressed both whether the parties' forum-selection clause was invalid and whether its enforceability should be construed under another state's law. *Rieker Shoe Corp.*, 378 Ill. App. 3d at 85-86, 93-94. Applying the multifactor reasonableness test, the court found the forum-selection clause valid in Illinois. *Id.* at 86. Separately, it disagreed that Illinois's choice-of-law rules dictated the application of New Jersey law, under which a forum selection-clause such as the one between the parties was not enforceable. *Id.* at 93. The court cited the parties' agreement, which provided that it was governed by Illinois law " 'without regard to such State's choice of law considerations.' " *Id.* at 94. Therefore, the court found, Illinois law applied and, under the reasonableness test it had already performed, the forum-selection clause was enforceable. *Id.*

¶ 71 Here, the parties chose Illinois as the forum state. Unlike in *Rieker*, there is no clause requiring that we ignore Illinois choice-of-law rules. Therefore, to examine whether New York law applies to interpreting the forum-selection clause, we turn to Illinois's choice-of-law rules. See *Western States Insurance Co. v. Zschau*, 298 Ill. App. 3d 214, 223 (1998) (Illinois courts apply Illinois choice-of-law rules). Defendants have not argued that the forum-selection clause violates Illinois public policy or is unreasonable under Illinois law, only that New York law applies to render the clause void and unenforceable.

¶ 72 Choice-of-law considerations arise only if there is an actual conflict of law among the states with an interest in a particular dispute. *Allianz Insurance Co. v. Guidant Corp.*, 373 Ill. App. 3d 652, 658 (2007). An actual conflict exists if application of one state's law will yield a different result than the application of another's, that is, if it will affect the outcome of the dispute. *Id.*; *Gleim v. Roberts*, 395 Ill. App. 3d 638, 639 (2009). Illinois generally follows the Restatement (Second) of Conflict of Laws (1971) in making choice-of-law decisions. *Hall v. Sprint Spectrum L.P.*, 376 Ill. App. 3d 822, 825 (2007). But see *Maher & Associates, Inc.*, 267 Ill. App. 3d at 77 (the Restatement is a guide for courts, "not black-letter law to be upheld against all other considerations").

¶ 73 Section 187 of the Restatement applies when, as here, the parties have made an express choice of law in their contract. Restatement (Second) of Conflict of Laws § 187 (1971); *Hall*, 376 Ill. App. 3d at 825; *Maher & Associates, Inc.*, 267 Ill. App. 3d at 76. In particular, section 187(2) provides:

"The law of the state chosen by the parties to govern their contractual rights and duties will be applied *** unless either

(a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or

(b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties." Restatement (Second) of Conflict of Laws § 187(2) (1971).

To ascertain the public policy of a state, we look to its constitution, legislative enactments, and judicial decisions. *Hall*, 376 Ill. App. 3d at 826.

¶ 74 Accordingly, our task is to first determine whether there is a conflict between New York and Illinois law. The plain language of section 757 provides that a construction contract provision that requires litigation, arbitration, or other dispute resolution arising from the contract to be conducted in another state is void and unenforceable. N.Y. Gen. Bus. Law § 757(1) (McKinney 2012). Here, we have a construction contract for a New York construction project. Exceptions to section 757's applicability, such as an exception for a contract with a material supplier, do not apply. Defendants are correct that section 757, by its plain language, requires that if you build in New York, you litigate in New York. See *HVS, LLC*, 17 N.Y.S.3d at 286 (enforcing section 757 to invalidate forum-selection clause, which required litigation in Ohio, in a contract for a construction project located in New York); see also *Welsbach Electric Corp. v. MasTec North America, Inc.*, 859 N.E.2d 498, 502 n.8 (App. Div. 2006) (section 757 was enacted to render void any provision that makes a construction contract subject to the laws of another state).

¶ 75       In Illinois, a forum-selection clause in a contract is *prima facie* valid and should be enforced unless the opposing party shows that enforcement would be unreasonable under the circumstances. *Rieker Shoe Corp.*, 378 Ill. App. 3d at 85-86. A forum-selection clause reached through arm's-length negotiation should be honored and enforced by the courts, absent a compelling and countervailing reason not to enforce it. *Mellon First United Leasing v. Hansen*, 301 Ill. App. 3d 1041, 1045 (1998). Defendants have not argued that the forum-selection clause is void and unenforceable under Illinois law. Because the forum-selection clause is *prima facie* valid under Illinois law but void under New York law, the forum-selection-clause issue would be decided differently depending on which forum's law applies. Accordingly, we have a conflict and proceed with a choice-of-law analysis.

¶ 76       Guided by the Restatement, we will apply Illinois law to interpret the forum-selection clause unless one of the following applies: (1) Illinois has no substantial relationship to the parties or the transaction, and there is no other reasonable basis for the parties' choice; or (2) application of Illinois law would be contrary to a fundamental New York policy, and New York has a materially greater interest than Illinois in the determination of this issue. See *Old Republic Insurance Co. v. Ace Property & Casualty Insurance Co.*, 389 Ill. App. 3d 356, 363 (2009). The basic reasoning behind these exceptions is that, in addition to fulfillment of the parties' expectation, regard must also be had for state interests and for state regulation. Restatement (Second) of Conflict of Laws § 187 cmt. g (1971).

¶ 77       The first exception does not apply, because there was a reasonable basis to choose Illinois as the forum state. Dancor is an Illinois corporation with a place of business in Illinois, which is generally sufficient to satisfy the "reasonable basis" for a choice of law. See *International Surplus Lines Insurance Co. v. Pioneer Life Insurance Co. of Illinois*, 209 Ill. App. 3d 144, 154 (1990) (citing Restatement (Second) of Conflict of Laws § 187 cmt. f (1971)).

¶ 78       On the other hand, we hold that the second exception does apply to this particular case. We explain as follows. Section 187 of the Restatement requires that the New York policy be "fundamental." Restatement (Second) of Conflict of Laws § 187 (1971). The comments do not define "fundamental" but do state that the policy must be "a substantial one." Restatement (Second) of Conflict of Laws § 187, cmt. g (1971). For example, a fundamental policy must relate to more than mere formalities in a contract. *Id.* Fundamental policies include state statutes that make certain contracts illegal or are designed to protect a person from another with superior bargaining power. *Id.* Statutes involving the rights of an individual insured against an insurance company would qualify. *Id.*

¶ 79       We have held that an Illinois statute that declared void any attempted contractual waiver of the statute was a fundamental public policy. *Maher & Associates, Inc.*, 267 Ill. App. 3d at 76 (interpreting the Sales Representative Act (820 ILCS 120/2 (West 1992)), and explaining that the difference between "void" and "void against public policy" was merely semantic). Similarly, we hold that section 757 of the New York General Business Law is a fundamental public policy in New York. A state's legislative enactments reveal a state's public policy. *Hall*, 376 Ill. App. 3d at 826. Here, section 757 of the New York General Business Law clearly evinces New York's public policy that construction contracts for New York construction projects be litigated in New York. See *supra* ¶ 73. Section 757 declares void and unenforceable specific provisions of construction contracts so that New York maintains an interest in construction within its borders. To enforce the forum-selection clause would be to disregard section 757 and New York's public policy regarding construction contracts.

¶ 80    Additionally, New York has a materially greater interest in the determination of the forum-selection clause issue. The subject matter of the contract, the AutoZone building, is in New York. Performance of the contract took place in New York. Defendants are from New York. Although the parties' contract states in section XXIX that the contract was executed in Kane County, the very next page (and the first page of the contract) contradict this statement, stating that the contract was executed in Florida. The only connection Illinois has to the litigation is Dancor's incorporation and place of business here, and we cannot say that this counterbalances New York's connections. *Cf. Old Republic Insurance Co.*, 389 Ill. App. 3d at 363 (Illinois did not have a materially greater interest in the litigation than Nebraska where litigation involved insurance companies from Nebraska and an agreement negotiated in Nebraska); *Maher & Associates, Inc.*, 267 Ill. App. 3d at 76 (applying the Restatement, Illinois did not have a materially greater interest than Texas where defendant was incorporated in Texas, had its primary place of business in Texas, and the contract at issue was a Texas contract; plaintiff had its primary place of business in Illinois but was incorporated in Minnesota and did business in multiple states); *Hall*, 376 Ill. App. 3d at 826 (Illinois did not have a materially greater interest in the litigation than Kansas or Missouri in multistate suit against telecommunications corporations incorporated in Kansas and Missouri).

¶ 81    We are mindful that the Restatement is a guide, not black-letter law. *Maher & Associates*, 267 Ill. App. 3d at 77. Illinois follows the modern approach to choice-of-law questions, placing the greatest importance on the public policy of the state in which the case is brought. *Id.* Nevertheless, this is a situation where New York has a clear public policy and Illinois does not have a competing interest in the litigation. In fact, Illinois implicitly shares New York's interest, as Illinois has a similar public policy that contracts for Illinois construction be litigated in Illinois.[2]

¶ 82    Nevertheless, Dancor argues that, if we apply New York law, section 41 of the New York Lien Law controls. We disagree. That section provides that a mechanic's lien on real property may be enforced against such property or against a person liable for the debt upon which the lien is founded in any of the following: the New York supreme court or a county court, regardless of the amount of the debt, or any court with jurisdiction in an action founded on a contract for a sum of money equivalent to the amount of such debt. N.Y. Lien Law § 41 (McKinney 2012). This general provision does not obviate consideration of the more specific section 757 of the New York General Business Law. Section 41 merely permits enforcement of mechanic's liens in various courts other than New York supreme or county courts, with some limitation on the sum of money sought. In contrast, section 757 speaks specifically to the validity and enforceability of forum-selection clauses in construction contracts. As we explained, *supra* ¶¶ 78-80, section 757 renders the forum-selection clause void and unenforceable.

---

[2]Section 10 of the Building Act provides that an Illinois construction contract provision that requires "any litigation, arbitration, or dispute resolution to take place in another state is against public policy. Such a provision is void and unenforceable." 815 ILCS 665/10 (West 2014). The plain language is clear that if you build in Illinois, you litigate in Illinois. *Cf. Foster Wheeler Energy Corp. v. LSP Equipment, LLC*, 346 Ill. App. 3d 753, 762 (2004) (holding that because section 10 of the Building Act substantively changed the law on forum-selection provisions, it would not apply retroactively to void the parties' forum-selection provision).

¶ 83    Accordingly, the circuit court did not err in applying New York law to find the forum-selection clause void and unenforceable.

¶ 84    Dancor and defendants next argue over whether dismissing the case under *forum non conveniens* was appropriate. However, we have already held that the circuit court properly dismissed the case after finding that the forum-selection clause was void and unenforceable. The circuit court's order does not analyze the application of the *forum non conveniens* doctrine, because its order is based on the affirmative matter of the applicability of New York law. Accordingly, we do not further address the *forum non conveniens* arguments.

¶ 85    We further hold that the circuit court did not err in granting FXR's motion to dismiss less than 120 days before trial. Local Rule 6.06 does not bar dispositive motions filed less than 120 days before trial. Rather, it permits such motions upon leave of court for good cause shown. 16th Judicial Cir. Ct. R. 6.06 (May 5, 2008) ("All case or claim dispositive motions *** will be filed for setting no longer than 120 days before the designated trial date except by leave of court upon good cause shown."). Here, the circuit court acknowledged the local rule in its order granting FXR's motion to dismiss. However, it effectively provided that there was good cause for the motion, in that its prior order allowing the case to proceed in Illinois was in error. The court had not been apprised of the applicable law providing that New York was the proper forum and that the forum-selection clause was void and unenforceable. We agree that this was good cause to hear the motion to dismiss. Moreover, the court's prior order was interlocutory, FXR's motion to dismiss was, in part, a motion to reconsider, and the court could reconsider its prior order at any time before trial.

¶ 86    The final issues are whether the circuit court properly dismissed Dancor's tort counts for injurious falsehood and slander of title. It dismissed these counts before its July 20, 2015, order, which held that, as to the entire action, the forum-selection clause was void and unenforceable. Dancor's injurious-falsehood count was part of its amended complaint, and the circuit court dismissed it without prejudice, informing Dancor that, if it sought to replead the count, it should do so as slander of title. In Dancor's second amended complaint, it did not replead an injurious-falsehood count but instead took the circuit court's admonishment to plead two counts of slander of title. The circuit court dismissed the slander-of-title counts in the second amended complaint with prejudice. Dancor thereafter moved to incorporate the prior injurious-falsehood count into the second amended complaint, but the circuit court denied its motion.

¶ 87    We need not review the dismissal of Dancor's tort counts. We have already determined that the circuit court properly dismissed the case pursuant to its interpretation of the forum-selection clause, finding that it was void and unenforceable. Accordingly, Dancor is free to refile this action in New York, where the New York court will address its complaint. Although the circuit court's dismissal was a final order, it was not on the merits. We do not address whether Dancor's tort counts, if it chooses to refile them, would state causes of action under New York law.

¶ 88                         C. Defendants' Arguments on Cross-Appeal

¶ 89    On cross-appeal, defendants argue that the circuit court should have granted their original motion to dismiss the case based on *forum non conveniens*. They note that, if we affirm the circuit court's order on Dancor's appeal, the cross-appeal is unnecessary. Because that is

precisely what we have done, we do not address their cross-appeal.

¶ 90                                    III. CONCLUSION

¶ 91        The forum-selection clause in the parties' contract was void and unenforceable, and therefore the circuit court did not err in dismissing the case in order that it may be refiled in New York. Dancor's arguments with respect to the dismissal of its tort counts are mooted by our determination that New York is the proper forum to adjudicate the parties' claims. Further, our holdings render defendants' cross-appeal moot. Therefore, the judgment of the circuit court of Kane County is affirmed.

¶ 92        Affirmed.